**Louis ANTU and Bexar County, Appellants,**

v.

**Billy P. EDDY and Barbara Eddy, Appellees.**

No. 04–95–00567–CV.

Court of Appeals of Texas, San Antonio.

Dec. 6, 1995.

Kathleen Finck Watel, Assistant Criminal District Attorney, San Antonio, for Appellants.

Tom Stolhandske, T.R. Whited, Jr., Stolhandske & Taylor, San Antonio, for Appellees.

Before CHAPA, C.J., and RICKHOFF and STONE, JJ.

## OPINION

PER CURIAM.

Appellants Louis Antu and Bexar County bring this interlocutory appeal from the trial court's denial of their amended motion for summary judgment based on official immunity. Appellants challenge the denial of summary judgment in two related points of error. We affirm in part and reverse and render in part.

## SUMMARY JUDGMENT PRINCIPLES

The law governing review of a trial court's order on a motion for summary judgment is well-settled. A defendant moving for summary judgment on an affirmative defense must conclusively prove all elements of that defense. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the non-movant. *Nixon,* 690 S.W.2d at 548–49; *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Every reasonable inference from the evidence will be indulged in favor of the non-movant, and any doubts will be resolved in his favor. *Nixon,* 690 S.W.2d at 549; *Montgomery,* 669 S.W.2d at 311.

## FACTS

The evidence before the trial court, viewed most favorably to appellees, is as follows: On July 6, 1991, Deputy Sheriff Antu and three other law enforcement officers responded to a call for a possible prowler in the 7600 block of Glen Shire. Dispatch records show a dispatch at 20:43 to 7634 Glen Shire for a prowler, and at 21:04 to 7631 Glen Shire for "miscellaneous." The officers spoke to persons outside 7634 Glen Shire, who informed them that someone (later revealed to be Dominey Bradley) had tried to break into their house and had then fled into 7631 Glen Shire.

Antu and another officer proceeded to the front door of 7631, while two other officers went around to the back of the house. One of those officers shouted that the suspect was in the back yard of the house. He tried to apprehend the suspect (Bradley), but Bradley ran in through the back door of the house and went into one of the back bedrooms. At that point, Antu burst through the front door of the house into the living room where appellees Billy and Barbara Eddy were watching television. Antu was shouting, "Where is he? Where is he?" but would not answer the Eddys' inquiries regarding what he wanted or who he was looking for.

When another officer brought Bradley and the Eddys' son out from one of the bedrooms, the Eddys asked why their son was under arrest and whether the officers had a warrant to enter their house. Antu would not respond to their questions, but told Billy Eddy to "sit down, old man" and "shut your f****** mouth." Billy Eddy repeatedly asked whether he had the right to know why the officers broke into his house and why his son was being arrested. Antu repeatedly told him to "shut his f****** mouth." Billy Eddy asked again as the officers were leaving with his son. Antu returned to the house, screamed that the Eddys "didn't have any god**** rights unless he said they had god**** rights," and placed Billy Eddy under arrest. Eddy was charged with hindering apprehension, but that charge was later dismissed for lack of evidence.

Barbara Eddy asked if she could get a shirt and some shoes for her husband, who was wearing only shorts, but Antu refused. She then looked out the front window of her home to see what the officers were doing with her husband. Antu saw her watching, returned to the house, pushed her down on a couch, and told her not to get up until the officers were gone or he would come back and arrest her, too. Barbara Eddy stated in her affidavit that she and her husband did not know until the incident was over that the officers were looking for Bradley. Had they known, they would have told the officers that he was in their son's room, although they did not know that Bradley was hiding under the bed.

Other summary judgment evidence shows that Antu handcuffed Billy Eddy so tightly that he suffered cuts to both arms that took three weeks to heal. He also forced Eddy into the patrol car in such a manner as to tear the skin from both of Eddy's elbows. Antu threatened to have Eddy fired from his job as a security guard and would not allow him to put on any shoes before making him walk across a parking lot covered with broken glass.

As a result of this occurrence, the Eddys sued Antu and Bexar County for false arrest, assault, and negligent infliction of emotional distress. Antu and Bexar County countered with the present motion for summary judgment.

## OFFICIAL IMMUNITY OF ANTU

 In point of error one, appellants contend that the trial court erred in denying Antu's motion for summary judgment because he is entitled to qualified immunity. Official or qualified immunity is an affirmative defense; the burden is on the defendant to establish each element of that defense. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994); *see also Kassen v. Hatley,* 887 S.W.2d 4, 8 (Tex.1994) (defendant has summary judgment burden to conclusively establish each element). Those elements are that the government employee was performing (1) discretionary duties in (2) good faith (3) within the scope of his authority. *City of Lancaster v. Chambers,* 883 S.W.2d at 653; *Kassen v. Hatley,* 887 S.W.2d at 9.

The parties do not dispute that Antu was acting within the scope of his authority at all times relevant to this action. We must therefore address only whether Antu was performing discretionary duties in good faith.

## DISCRETIONARY DUTY

 The focus of our inquiry must be on whether Antu was performing a discretionary function, not on whether he had discretion to commit wrongful acts while discharging that function. *City of Lancaster v. Chambers,* 883 S.W.2d at 653. A function is ministerial if the law prescribes the duties to be performed with such precision that nothing is left to the discretion of the actor. *Id.* at 654; *Kassen v. Hatley,* 887 S.W.2d at 9. If, however, the act involves personal deliberation, decision, and judgment, it is discretionary. *City of Lancaster v. Chambers,* 883 S.W.2d at 653; *Kassen v. Hatley,* 887 S.W.2d at 9.

In *City of Lancaster v. Chambers,* the Texas Supreme Court held that the decision to pursue a suspect, in the context of a high-speed vehicle chase, "will fundamentally involve the officer's discretion, because the officer must, in the first instance, elect whether to undertake pursuit." 883 S.W.2d at 655. The officer must also exercise discretion in

determining such things as the route to follow, whether to call for back-up, and how closely to follow. The same reasoning applies to a foot pursuit of a fleeing felon.

Antu was required in the present case to exercise his discretion in deciding whether to pursue the suspect and when and by what means to enter the Eddys' house in the course of that pursuit. We hold that engaging in this pursuit was a discretionary act.

■ We also hold that the decision whether to make an arrest requires the exercise of discretion. While the law prescribes and defines those offenses for which a person may be arrested, determining whether probable cause exists that the person has committed an offense and further determining whether the person should be arrested involve personal deliberation and judgment. Thus, effecting an arrest is a discretionary act.

### GOOD FAITH

■ The Texas Supreme Court recently articulated a new test for determining whether a police officer seeking official immunity acted in good faith. In *City of Lancaster v. Chambers*, the court held that a police officer acts in good faith in a pursuit case if "a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit." 883 S.W.2d at 656. The nonmovant must show that "no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Id.* at 657 (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993)). The *Chambers* court also quoted

with approval the law regarding federal qualified immunity in § 1983 cases: "[W]e look to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Id.* at 656 (quoting *Swint v. City of Wadley*, 5 F.3d 1435, 1441–42 (11th Cir.1993)).

■ To establish his good faith in the present case, Antu must have proved that a reasonably prudent officer, under the same or similar circumstances, could have believed that his actions were justified. In this regard, we see Antu's actions as falling within two categories: (1) those related to the pursuit of Bradley and (2) those related to the arrest of Billy Eddy. This distinction is valid and necessary because the pursuit of Bradley and the arrest of Eddy were not intertwined events, but were conducted independently. Antu left the Eddys' house when Bradley was arrested and removed from the house. His contact with the Eddys could well have ended at that time, but Antu returned to the house to again confront the Eddys. At that time, any exigency relating to the pursuit of Bradley was over; any action necessary to his apprehension was completed. The second confrontation with the Eddys was a distinct incident and will be analyzed as such.

### 1. *Actions related to the pursuit of Bradley*

■ Appellants assert that Antu had the authority to enter the Eddys' house under articles 14.04 [1] and 14.05 [2] of the Code of Criminal Procedure. Those articles allow a peace officer to pursue and arrest a fleeing felon without a warrant and to enter a residence to make such an arrest if exigent circumstances require it. *See also McNairy*

---

1. Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.
 TEX.CODE CRIM.PROC.ANN. art. 14.04 (Vernon 1977).

2. In each case enumerated where arrest may be lawfully made without warrant, the officer or person making the arrest is justified in adopting all the measures which he might adopt in

cases of arrest under warrant, except that an officer making an arrest without a warrant may not enter a residence to make the arrest unless:
(1) a person who resides in the residence consents to the entry; or
(2) exigent circumstances require that the officer making the arrest enter the residence without the consent of a resident or without a warrant.
TEX.CODE CRIM.PROC.ANN. art. 14.05 (Vernon Supp. 1995).

*v. State*, 835 S.W.2d 101, 107 (Tex.Crim.App. 1991) (increased likelihood of catching suspect may be exigent circumstance justifying warrantless entry). Further, exigent circumstances are determined by what the officer knew at the time of the warrantless entry, not what is later revealed. *See Janicek v. State*, 634 S.W.2d 687, 691 (Tex.Crim.App. 1982) (exigent entry decision is good or bad at instant it is made and is not affected by later information).

Appellants offered proof that Antu and the other officers were told by persons at the scene that someone had tried to break into their house and had then fled into a house across the street. Entry into a habitation without the effective consent of the owner with intent to commit a felony or theft is burglary. *See* Tex.Penal Code Ann. § 30.02(a) (Vernon 1994). Burglary of a habitation is a first degree felony. *See* Tex.Penal Code Ann. § 30.02(d)(1) (Vernon 1994). An attempt to commit burglary of a habitation is a second degree felony. *See* Tex.Penal Code Ann. § 15.01(d) (Vernon 1994) (attempt is one degree lower than offense attempted). Thus, the information given by persons at the scene indicated that a felony—attempted burglary—had been committed.

The information possessed by Antu at the time he entered the Eddys' house was such that a reasonable officer could have believed that (1) a felony had been committed, (2) entry into the house was authorized under articles 14.04 and 14.05, and (3) entry into the house was necessary to arrest the fleeing felon and prevent his escape. The Eddys attempt to controvert the proof of good faith in this respect by arguing that the dispatcher had down-graded the call from "prowler" to "miscellaneous" by the time Antu arrived on the scene. The Eddys infer from this that Antu must have known before he entered their house that the alleged offense was minor rather than a felony. In support of this position, they offer the affidavit of a neighbor who said she saw Bradley pull a board off a fence surrounding the complainant's house and then walk back into the Eddys' house.

The Eddys' proof does not establish that no reasonable officer in Antu's position could

have thought that the circumstances justified entry into the Eddys' house in pursuit of Bradley. First, the Eddys offered only a computer printout showing a dispatch at 20:43 to 7634 Glen Shire for a prowler and a dispatch at 21:04 to 7631 Glen Shire for "miscellaneous." There is no proof of the significance of these entries, whether they in fact relate to the same incident, or on what information they were based. Second, the Eddys do not dispute that persons at the scene informed the officers that an attempted burglary had been committed and that the perpetrator had fled into the Eddys' house. The label given the call by the dispatcher certainly does not negate this information. Finally, there is no showing that the neighbor who gave the affidavit regarding the minor nature of the offense ever spoke to the officers at the scene or that the officers had any knowledge of this information at the time they entered the Eddys' house.

■ We conclude that Antu performed a discretionary act within his authority and in good faith when he entered the Eddys' house in pursuit of a person whom he believed to be a fleeing felon. Because he is entitled to official immunity in this regard, he is not liable for any negligent actions occurring during the course of his entry and pursuit of Bradley. *See Harris County v. Ochoa*, 881 S.W.2d 884, 889 (Tex.App.—Houston [14th Dist.] 1994, writ denied). Fact issues relating to whether Antu verbally abused the Eddys during his pursuit of Bradley are not material to the issue of official immunity and will not defeat his entitlement to summary judgment on those causes of action arising from the pursuit. *See id.* (fact issues on negligence immaterial once official immunity proved).

2. *Actions related to the arrest of Billy Eddy*

We have determined that Antu is immune from liability for his actions relating to the pursuit of Bradley. Antu's contact with the Eddys was renewed, however, after Bradley was apprehended and arrested. We believe it is appropriate to subject Antu's subsequent treatment of the Eddys to independent analysis to determine whether he was still acting

in good faith and, therefore, was still entitled to official immunity.

a. *False arrest*

A peace officer is authorized to arrest an offender without a warrant for any offense committed within the officer's presence. TEX.CODE CRIM.PROC.ANN. art. 14.01 (Vernon 1977). Even so, the arrest must be supported by probable cause. *Stull v. State*, 772 S.W.2d 449, 451 (Tex.Crim.App.1989). Probable cause exists where the information known to the officer is sufficient to warrant a man of reasonable caution in the belief that a particular person has committed or is committing an offense. *Amores v. State*, 816 S.W.2d 407, 413 (Tex.Crim.App.1991).

In the present case, viewing the facts most favorably to the Eddys, the facts known by Antu at the time he arrested Billy Eddy were as follows: (1) an alleged felon had fled into the Eddys' house; (2) neither Billy nor Barbara Eddy was the alleged felon; (3) the Eddys did not know why the officers were in their house, who they were looking for, or why their son was being arrested. According to the Eddys' version of the events, Billy Eddy was not abusive to the officers, but was simply trying to ascertain and exercise his rights.

The Eddys assert that at the time Billy Eddy was arrested, Antu did not even know what he was arresting him for. Rather, on the way to the jail, Antu "kept calling on the radio to find out what they could even charge [Eddy] with." Even if we assume that Antu intended to arrest Eddy for hindering apprehension (the charge that was eventually filed against him) we must conclude that the Eddys have demonstrated that no reasonably prudent officer could have believed that probable cause existed for the arrest or that the arrest was lawful.

Hindering apprehension requires that a person, acting with intent to hinder the arrest of another, "(1) harbors or conceals the other; (2) provides or aids in providing the other with any means of avoiding arrest or effecting escape; or (3) warns the other of impending discovery or apprehension." TEX.PENAL CODE ANN. § 38.05 (Vernon 1994).

Antu knew that the alleged felon had entered the back door of the Eddys' house, but the Eddys were in the front portion of the house watching television. Antu relies on statements by the Eddys that they knew that Bradley was in their house. There is no evidence, however, that Antu knew this at the time of the arrest. Further, while the Eddys freely admit that they knew that Bradley was in their house, they insist that they did not know that the officers were searching for Bradley. Had they known, they would have told the officers that Bradley was in their son's bedroom. Without some indication that the Eddys not only knew that Bradley was in the house, but that the officers were seeking to arrest Bradley, no reasonably prudent officer could conclude that there was probable cause to believe that Billy Eddy harbored Bradley, provided him with means to avoid arrest, or warned him of impending discovery.

Because no reasonably prudent officer in these circumstances could have concluded that the arrest of Billy Eddy was lawful, we must conclude that appellants have failed to prove as a matter of law that Antu acted in good faith in effecting that arrest. Thus, Antu is not entitled to summary judgment in regard to the claim for false arrest.

b. *Assault and negligent infliction of emotional distress*

Again assuming the truth of the facts alleged by the Eddys, Antu physically assaulted Barbara Eddy by pushing her onto a couch and physically assaulted Billy Eddy by handcuffing him so tightly that he cut his arms and by forcing him into the patrol car in a manner that caused injury to his elbows. Antu also threatened Billy Eddy with the loss of his job and threatened Barbara Eddy with arrest if she got up from her couch. All of these actions occurred after Bradley had been arrested and removed from the Eddys house; they were in no way connected with the pursuit of the fleeing felon.

If Antu is entitled to official immunity for the arrest of Billy Eddy, he is also immune from liability for any negligent infliction of harm in effecting that arrest. However, as decided above, Antu has not proven his

entitlement to immunity from liability for the arrest. Appellants have also not made any showing that a reasonably prudent officer in the same circumstances could have believed that the alleged assaults and threats were a lawful exercise of police authority. Rather, contrary to established summary judgment law, appellants dispute the Eddys' version of the events and rely on inferences adverse to the Eddys as the non-movants. For example, appellants assert that Billy Eddy injured himself by resisting the officers and struggling while in the back seat of the patrol car. There is no evidence of physical resistance or a struggle and the Eddys specifically contend that the injuries were caused by Antu's mistreatment. Further, appellants' assertion that Billy Eddy's injuries were minor has absolutely no bearing on the issue of whether those injuries were inflicted by Antu and whether Antu was acting in good faith at the time.

Appellants also assert that Antu never went back into the Eddys' house and never pushed Barbara Eddy or yelled at her. The Eddys filed summary judgment evidence stating that these actions did occur. Antu cannot demonstrate his entitlement to summary judgment by relying on disputed facts.

 Because appellants have failed to prove as a matter of law that Antu acted in good faith in his treatment of the Eddys subsequent to the pursuit and arrest of Bradley, Antu is not entitled to official immunity in regard to their claims for assault and negligent infliction of emotional distress.[3]

Appellants established as a matter of law that Antu is entitled to official immunity for those actions arising out of the pursuit and arrest of Bradley. These actions include the warrantless entry into the Eddys' house and alleged verbal abuse directed toward the Eddys during the search for and subsequent arrest of Bradley. Appellants have not, however, established as a matter of law that Antu is entitled to official immunity for those actions taken in regard to the Eddys subsequent to the arrest and removal of Bradley.

These actions include the alleged verbal abuse directed toward the Eddys after Antu had left the house and then returned, the alleged false arrest, the alleged physical assaults on both Eddys, and the alleged verbal threats made to both Eddys. Point of error one is thus sustained in part and overruled in part.

## OFFICIAL IMMUNITY OF BEXAR COUNTY

 In point of error two, appellants contend that the trial court erred in denying Bexar County's motion for summary judgment "because, if its employee, Louis Antu, is not liable pursuant to his qualified immunity, then the County is not liable." If a governmental employee is entitled to official immunity, the governmental entity is entitled to the benefit of that immunity in maintaining its own sovereign immunity. *See City of Houston v. Kilburn*, 849 S.W.2d 810, 812 (Tex.1993) (sovereign immunity can be based on employee's official immunity). Our disposition of this appeal as to the County is therefore the same as the disposition stated above as to Antu. Point of error two is sustained in part and overruled in part.

## CONCLUSION

The order of the trial court is affirmed insofar as it denies summary judgment to Louis Antu and Bexar County for causes of action arising out of actions taken by Louis Antu subsequent to the arrest of Dominey Bradley and the removal of Dominey Bradley from Billy and Barbara Eddy's house. Those causes of action are remanded to the trial court for trial on the merits. The order of the trial court is reversed insofar as it denies summary judgment to Louis Antu and Bexar County for causes of action arising out of actions taken by Louis Antu during the pursuit of, search for, and arrest of Dominey Bradley. Partial judgment is rendered that the motion for summary judgment is granted in part and that Billy and Barbara Eddy take nothing from Louis Antu and Bexar County

---

3. Whether Texas recognizes a claim for negligent infliction of emotional distress in these circumstances is not an issue that we can resolve in this interlocutory appeal. Our jurisdiction extends only to determining whether the defendants are entitled to official immunity. *See Brooks v. Scherler*, 859 S.W.2d 586, 588 (Tex.App.—Houston [14th Dist.] 1993, no writ).

on any claim arising out of actions taken by Louis Antu during the pursuit of, search for, and arrest of Dominey Bradley.