POLITZ, Chief Judge,
with whom WIENER and DENNIS, Circuit Judges, join, dissenting:
The majority opinion notes that the court determined to rehear this case en banc to address the application of Illinois v. Gates[1] to statements made by ordinary citizens who are crime scene bystanders with knowledge of specific criminal activity. After performing that Gates analysis, however, the majority opinion further concludes that exigent circumstances justified the warrantless entry into 2302 Bleker Street. Persuaded that the district court’s rulings on the existence of probable cause and exigent circumstances were clearly erroneous, I must dissent.
After evaluating the totality of the circumstances, as Gates requires, the majority concludes that Dorothy Cooksey’s statement to the police provided probable cause for the officers to believe (1) that illegal narcotics would be found at 2302 Bleker Street and (2) that Ricky Thomas was hiding there. Noting that her statement “fit” with information the officers already had, the majority identifies several things that the government “knew” from their early morning raid at 3717 Campbell. The officers knew that a black male, “tentatively identified as Ricky Thomas,” had been selling narcotics from 3717 Campbell. They suspected, based on what they found in the raid, that a heavily-guarded “stash house” would be located nearby. They expected that “other individuals, probably gang members,” would be involved in selling narcotics with the suspected Thomas. Finally, they believed that their suspect and someone named “Lamont” had committed an aggravated sexual assault with a firearm at 3717 Campbell two months earlier. Cooksey identified the man in the photo the police showed her as Richard J. Thomas and told them that he ultimately would return to his residence at 2302 Bleker, which she said was a “known drug house.”
The majority maintains that there was no reason for the officers to disbelieve Cooksey or to question her motives or credibility, holding that “absent specific reasons for police to doubt his or her truthfulness, an ordinary citizen, who provides information to police at a crime scene or during an ongoing investigation, may be presumed credible without subsequent corroboration.” The majority ignores the fact that the record contains different versions of what Cooksey told the police. It also sidesteps the fact that although Cooksey lived two houses north of 2302 Bleker, she could not see that house from her own and she did not tell the police that she had actually seen Ricky go there. Further, there is more than a mere measure of doubt in suggesting that it was reasonable for the police to assume that Thomas, if there, would continue to hide in the house which was only fifteen feet from the site of the raid at 3717 Campbell.
The supporting affidavit for the search warrant included other information of questionable validity. The majority opinion opts not to address whether Officer Weston conducted an unconstitutional search by peeking through the rear window of 2302 Bleker. Although a piece of plywood covered most of the opening, by leaning against the house and pressing his face within inches of a small gap in the plywood, Weston was able to see inside. In his affidavit he stated that he “observed the suspect Donnie Lamont Blount moving around the room and [he] appeared to be hiding something.” The police later found cocaine, drug paraphernalia, and firearms in a locked closet.
The district court found that Weston’s actions did not constitute an illegal search because he was in the backyard to seal an avenue of escape, not to peer into the window. This factual finding regarding Weston’s subjective state of mind is inapposite to the question presented, ie., whether Weston’s objective conduct violated the defendants’ legitimate expectation of privacy in the *841 curtilage of their home.[2] When a police officer walks into the partially fenced back yard of a residential dwelling, using a passage not open to the general public, and places his face within inches of a small opening in an almost completely covered rear window to look into the house and at the inhabitants, I am persuaded beyond peradventure that the officer has performed a “search” within the meaning of the fourth amendment. The majority claims that to the extent any of the evidence from this “search” was admitted at trial, any error was harmless because there was overwhelming evidence to support the convictions. My read of the record convinces otherwise. In the instant case, Weston’s actions provided essential information for obtaining the search warrant. I cannot agree that the error was harmless.
The majority purports to excise Weston’s observations from the affidavit supporting the search warrant and concludes that the remaining evidence sufficed to provide probable cause. Some of the critical remaining evidence, including the presence of cocaine residue in plain view in the kitchen, was obtained in the protective sweep the officers conducted after Blount and Johnson opened the door to the uniformed officers they had summoned by dialing 911. The government contends that the officers’ entry was a proper sweep incident to a lawful arrest. The majority justifies the search by concluding that exigent circumstances existed in doing so, ignoring the difficult issue of probable cause to arrest Blount and Johnson. I find their analysis flawed in several respects.
If Cooksey’s statements are given less than dispositive weight in the calculation and tainted evidence is excluded, probable cause is wanting for either a search of 2302 Bleker or the arrest of Blount and Johnson. The district court found that the police had probable cause to arrest the defendants for the crimes of harboring a fugitive (Thomas) and possessing contraband.[3] A precondition to the crime of harboring a fugitive under federal law is the issuance of an arrest warrant.[4] The police were well aware that there was no extant arrest warrant for Thomas at the time Blount and Johnson were arrested. The analogous Texas statute requires knowledge of the fugitive’s status and some affirmative action hindering police access to a felon.[5] The police in this case simply arrested the defendants on first sight, inquiring about Thomas’s whereabouts only after the defendants had been “secured.” On these facts an objectively reasonable police officer would have had no probable cause to arrest the defendants for harboring a fugitive. While we have extended the Supreme Court’s holding in Maryland v. Buie[6] to permit a protective sweep ancillary to a warrantless arrest,[7] the fourth amendment does not sanction such a search incident to an illegal arrest.
Without probable cause to arrest or perform a search, the police may not enter without a warrant. Although exigent circumstances permit police to perform a warrant-less search, officers may not rely on exigencies that they created through unreasonable investigatory tactics.[8] Warrantless searches are presumed to be unreasonable and the government bears the burden of proving that *842 such a search was necessary.[9] My review of the record compels the conclusion that the district court clearly erred in finding exigent circumstances.
The majority characterizes the circumstances suiTOunding the search as a “fast-moving and unpredictable scene in a tough neighborhood infected by a violent drug-trafficking gang.” According to the opinion, the police were in pursuit of a “fleeing felon” and had a reasonable belief that he was “armed, dangerous, and would attempt to evade capture.” The majority would have us believe that it “would have been virtually impossible to covertly secure 2802 Bleker” because it was reasonable to believe that the raid conducted next door at 3717 Campbell alerted the individuals inside the house to the police presence even before the officers knocked on the door. They opine that the fact that Blount and Johnson refused to answer the door and were heard moving around inside added to the likelihood that “significant evidence was being destroyed.” Further, based on the officers’ experience, it was also likely that the individuals inside the house were participating with Thomas in selling narcotics and were armed. As a result, the situation posed a significant risk to the officers and to the onlookers outside. The majority concludes that it was not possible for the officers to set up surveillance while waiting on a warrant.
The record demonstrates otherwise. To determine whether exigent circumstances were manufactured by the police, we must “review the entirety of the agents’ investigative tactics, particularly those leading up to the exigency alleged to have necessitated the protective sweep.”[10] Considering the five factors we have identified,[11] I believe that the police could have and should have waited to obtain a warrant before entering 2302 Bleker. Contrary to the majority’s version of the events, Thomas was not a “fleeing felon.” At most he was a “fleeing suspected felon.” Any continuous police pursuit of Thomas had ended over thirty minutes before the police approached 2302 Bleker. There is no evidence that the inhabitants of the house were aware of the police presence before the agents knocked on the door. Aside from Cooksey’s broad and uncorroborated statement, there was no indication that contraband would be found in the house and certainly no evidence regarding its “ready destructibility” or the risk of its removal or destruction. While the obvious prospect of danger attends nearly every narcotics investigation, the police were unaware of any particular danger to themselves or others which might distinguish this ease. For example, there was no evidence that Thomas was armed when he fled 3717 Campbell. None of the officers involved in the initial chase reported seeing Thomas with a firearm.[12]
The officers were in a position to call in reinforcements and seek a warrant while keeping the house under surveillance, a markedly safer and, incidentally, a constitutional course of action which would have obviated the need to brazenly confront the unknown in 2302 Bleker. In short, “[tjhere was no basis, on these facts, for believing that resort to a magistrate would have created risks of a greater magnitude than those which • are present in any case where the police have probable cause but delay entry pending receipt of a warrant.”[13] I find no alternative to concluding that the district court’s finding of exigent circumstances was *843 clearly erroneous. All evidence obtained in the protective sweep should have been excised.
Because there was no probable cause for the warrant’s issuance, all of the evidence seized pursuant to the warrant should have been suppressed. Given the substantial amount of evidence thus excluded, the error was not harmless and, accordingly, the convictions of both defendants on Counts 1 and 2 of the indictment should be vacated and remanded for further proceedings. I must respectfully dissent.

. 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

. See Whren v. United States, - U.S. -, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (proper focus of fourth amendment inquiry is the objective conduct, not the subjective intent, of the police officer); United States v. Causey, 834 F.2d 1179 (5th Cir.1987) (en banc) (same).

. My review of the record persuades that this justification for the arrests only evolved during the defendants’ trial, with supporting testimony from Weston elicited by the leading questions from the prosecutor. Our en banc holding in Causey, however, requires that we ignore this pretextual submission and confine our examination to the propriety of the officers' objective actions. United States v. Flores, 63 F.3d 1342 (5th Cir.1995).

. See 18 U.S.C. § 1071; United States v. Zerba, 21 F.3d 250 (8th Cir.1994); United States v. Lockhart, 956 F.2d 1418 (7th Cir.1992).

. Tex. Penal Code Ann. § 38.05; Antu v. Eddy, 914 S.W.2d 166 (Tex.App.—San Antonio 1995).

. 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

. United States v. Mendoza-Burciaga, 981 F.2d 192 (5th Cir.1992).

. United States v. Richard, 994 F.2d 244 (5th Cir.1993).

. United States v. Rico, 51 F.3d 495 (5th Cir.), cert. denied, - U.S. -, 116 S.Ct. 220, 133 L.Ed.2d 150(1995).

. Id. at 501.

. The factors are: (1) the degree of urgency involved and the time needed to obtain a warrant; (2) the existence of a reasonable belief that contraband is about to be removed or that a suspect may flee; (3) the risk of danger to police or bystanders; (4) information indicating that the suspects are aware of the police presence; and (5) the ready destructibility of any contraband present. Richard, 994 F.2d at 248.

. The firearm named in the affidavit supporting the search warrant for 3717 Campbell was seized during the search. The officers’ suspicion that Thomas was armed stemmed entirely from the fact that Thomas was a suspect in an aggravated sexual assault that had occurred two months earlier.

. United States v. Munoz-Guerra, 788 F.2d 295, 298 (5th Cir.1986).