**Terry Lee GARDNER Plaintiff**

v.

**Allen HILL, Angelina County Sheriff's Deputy; Kenneth Brad Havard, Angelina County Sheriff's Deputy; and Angelina County, Texas Defendant**

No. CIV.A. 9:00–CV–214.

United States District Court,
E.D. Texas,
Lufkin Division.

Dec. 18, 2001.

Alex A. Castetter, Stucky Garrigan & Castetter, Nacogdoches, TX, for Plaintiff.

Kenzy Donovan Hallmark, Zeleskey Cornelius Hallmark Roper & Wicks, Lufkin, TX, for Defendants.

## MEMORANDUM OPINION

COBB, District Judge.

Before the court is Defendants' Motion for Summary Judgment [Dkt # 17], and the court having reviewed the motion and response on file is of the opinion that the motion be GRANTED in PART and DENIED in PART.

Plaintiff in this case alleges that Angelina County police officers unlawfully arrested him and used excessive force in the course of that arrest, resulting in physical and emotional injury. Plaintiff filed this action against both the County and the individual officers asserting claims under

42 U.S.C. § 1983 and under state laws. Now before the court is Defendants' Motion for Summary Judgment.

## I. Summary Judgment Standard

A court should grant summary judgment when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it might affect the outcome of a case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue exists when, in the context of the entire record, a reasonable fact-finder could return a verdict for the non-movant. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services,* 504 U.S. 451, 478, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1272 (5th Cir. 1994). However, this favorable presumption for the non-movant exists only when the non-movant presents an actual controversy of fact. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

## II. Background

On June 30, 1999, Terry Lee Gardner drove down a street in Lufkin, Texas with Clifton Johnson as his passenger when a police vehicle driven by Deputy Hill pulled out in front of him. Gardner swerved and slammed on his brakes. He then honked his horn and flicked his lights at the police cruiser. Gardner and Deputy Hill then got out of their vehicles and Gardner informed Hill that Hill had broken the law.

Hill responded by asking Gardner for his driver's license.

Deputy Havard, who was in the cruiser with Hill, then took off running after a suspect and Hill threw down Gardner's license and followed Havard. Evidently, the two officers had just been called to a scene a few blocks away where another officer had been assaulted. The two officers left Gardner and Johnson, but when they returned a little while later, they found Gardner and Johnson still there. Hill again asked Gardner for his license and as Gardner handed it over, Gardner claims Havard grabbed his hands, put them behind his back, and shoved him against the car. Gardner contends that he told the officers that he had done nothing wrong, but that the officers talked about taking him to jail. Gardner contends they discussed whether they thought he was intoxicated. Gardner alleges he offered to take a Breathalyzer test, but one was never administered.

The officers then arrested him and Gardner was later charged with public intoxication, interfering with a public servant, and disorderly conduct. All these charges were later dropped, but Gardner did spend two nights in jail. Gardner further contends that when Havard put him in the cruiser, the officer closed the door on his leg. Gardner alleges that after this incident he was in pain for several days, lost weight because he stopped eating, has not been able to sleep well, and has had to take blood pressure pills.

The officers justified the public intoxication charge by saying that they observed Gardner with red, glossy and bloodshot eyes and that he was acting irrational. They claim the interfering with a public servant charge was based on Gardner pushing Havard away from him when Havard went to perform a protective frisk. Gardner's uncooperativeness was why Ha-

vard claims he had to wrestle Gardner to the car. Finally, the disorderly conduct charge was based upon Gardner's alleged use of profanity in the lobby of the police station when the officers brought him in to the station. Gardner claims none of the officers' allegations are true.

Gardner claims that Hill told him before June 30, 1999 that Hill did not think he had to abide by the law and that he better not catch Gardner out on the streets. Gardner filed a complaint about his treatment on this particular occasion with the police department. He went back a few days later to talk with Sheriff Henson to see how the investigation into his complaint was progressing. Not happy with the progress Gardner told Henson that something had to be done and that he would contact an attorney if necessary, Henson told him to leave his office, and allegedly said that he "had a place for [him]." No one asked Havard to write a report about the incident and, in fact, he never wrote a report about this arrest. Henson admits no determination was made regarding Gardner's complaint and no disciplinary action was taken against either Hill or Havard.

Hill admits that it is common for arrestees to contend that they are innocent and that the police used too much force in arresting them, but these complaints do not appear in his reports. Havard also admits that arrestees often claim to be innocent, but that he does not put these complaints in his reports. Finally, Sheriff Henson is unaware if the county keeps records of verbal complaints made against his department.

## III. Gardner's Claims Against Angelina County

Gardner has brought claims under 42 U.S.C. § 1983 against Angelina County based on the actions taken by Deputy Havard and Deputy Hill on June 30, 1999

towards him. The County claims that Gardner is attempting to impose vicarious liability on it for the actions of the officers and has failed to establish the existence of a persistent and widespread practice or custom that acted as the moving force behind the plaintiff's injury. As such, the County argues it is entitled to summary judgment on Gardner's claims against it. The court agrees with the County.

### A. Municipal Liability Standard

Supreme Court precedent establishes that a municipality is not vicariously liable for the actions of its officials. *Monell v. New York Dept. of Social Services,* 436 U.S. 658, 690–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality may be liable under § 1983, however, where the alleged unconstitutional activity is inflicted pursuant to official policy. *Id.* at 690–91, 98 S.Ct. 2018. In order to survive summary judgment, therefore, a plaintiff must set forth facts that create a fact issue as to whether his constitutional rights were violated pursuant to an official municipal policy. *Eugene v. Alief Independent School Dist.,* 65 F.3d 1299, 1304 (5th Cir.1995).

The Fifth Circuit has defined official policy as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom

that body had delegated policy-making authority. *Bennett v. City of Slidell,* 735 F.2d 861 (5th Cir.1984).

Not only must a plaintiff identify an official policy, but the plaintiff must also demonstrate that the policy was the "moving force" behind his constitutional injury. *Board of Commissioners of Bryan County v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405, 117 S.Ct. 1382.

Furthermore, when a plaintiff attempts to establish municipal liability through the second type of official policy, a persistent and widespread practice, the plaintiff must ordinarily demonstrate more than a single incident to have liability imposed upon the municipality. *Snyder v. Trepagnier,* 142 F.3d 791, 798 (5th Cir. 1998). Rather, the plaintiff must demonstrate "a pattern of similar incidents in which citizens were injured ... to establish the official policy requisite to municipal liability under section 1983." *Id.* (quoting *Rodriguez v. Avita,* 871 F.2d 552, 554–55 (5th Cir.1989)). "Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." *Bennett v. City of Slidell,* 728 F.2d 762, 768 n. 3 (5th Cir.1984).

**B.** *Angelina County is Entitled to Summary Judgment on Gardner's § 1983 Claims*

Gardner's summary judgment evidence fails to create a fact issue as to whether Angelina County can be held liable under § 1983. Because Gardner has failed to come forward with any evidence of a policy, statement, ordinance, regulation or decision adopted and promulgated by the County of Angelina that lead to the alleged violation of his constitutional rights, municipal liability may only be established by demonstrating the existence of a persistent and widespread practice or custom of Angelina County that acted as the moving force behind his injury. Gardner sets forth several theories in an attempt to establish the existence of such a practice or custom, but none are sufficient to create liability against the County.

First, the plaintiff argues that the County's failure to keep records of oral complaints made against police officers has lead to the officers making unlawful arrests and using excessive force. Gardner, in conclusory fashion, states that Angelina County does not keep records of oral complaints because "they do not want to know about them." *Plaintiff's Response to Defendants' Motion for Summary Judgment* at 26. This court is unable to reach the same conclusion as the plaintiff because the County does maintain a formal procedure for taking written complaints and it keeps records of these complaints. Mr. Gardner is well aware that such procedures exist because he filed a written complaint against Deputy Hill. While it may (or may not) be a good practice to keep records of oral complaints made against officers, courts have been reluctant to declare specific standards or practices to be constitutionally mandated, and this court is not prepared to require municipalities to maintain records of oral complaints. *See Holland v. City of Houston,* 41 F.Supp.2d 678, 704 (S.D.Tex.1999). Furthermore, because Angelina County already has a system of recording complaints, the court cannot find that the failure to keep records of oral complaints amounts to an inherently

deficient administrative procedure. As such, the court cannot agree with Gardner that the failure to keep records of oral complaints demonstrates the existence of a persistent and widespread practice or custom that acted as the moving force behind his injury.

■ Gardner also argues that Angelina County ratified Hill and Havard's actions because the County failed to investigate and discipline the officers after he filed his written complaint. The Fifth Circuit, however, has refused to declare that a municipality ratified an officer's misconduct simply because it failed to punish him for those actions on one occasion and the court has refused to infer an official policy from a single isolated failure to· punish officer misconduct. *Fraire v. City of Arlington,* 957 F.2d 1268, 1278 (5th Cir.1992). As the plaintiff produced no evidence that this was anything more than a one time occurrence, this court cannot find Angelina County ratified the officers' conduct, nor can the court infer a persistent and widespread practice or custom.

■ Finally, Gardner argues that the County failed to supervise the officers because the officers were allowed to arrest Gardner without contacting their supervisors. The court wonders if the plaintiff really expects that police officers should only be allowed to make an arrest if they first get the approval of their supervisors? Such a requirement would surely bring police operations in this country to a grinding halt. Furthermore, the plaintiff has· failed to demonstrate that this so-called "lack of supervision" amounts to a "deliberate indifference to the rights of persons with whom the police come into contact." *City. of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Looking at Gardner's case against the County in general, and doing so in a light most favorable to Gardner, the only evidence he is able to muster to counter Angelina County's motion for summary judgment shows an isolated incident of police misconduct and an isolated incident of the County failing to discipline the officers for this misconduct. As stated above, municipalities in the Fifth Circuit are generally not held liable under § 1983 for isolated incidents of misconduct. *See, e.g., McClendon v. City of Columbia,* 258 F.3d 432, 442 (5th Cir.2001); *Snyder,* 142 F.3d at 798. To establish municipal liability under §. 1983, a plaintiff must demonstrate a pattern of similar incidents in which citizens are injured. Gardner has not shown that either these officers or the rest of the County's police officers have committed a pattern of similar incidents. As such, and because a municipality cannot be held liable under a theory of *respondeat superior,* Gardner has failed to create a fact issue as to Angelina County's municipal liability and his § 1983 claims against the County should, therefore, be dismissed with prejudice.

## IV. Gardner's Claims Against Deputy Havard

Gardner has brought several claims against Deputy Havard. He has filed federal § 1983 claims against the officer for unlawful arrest and excessive use of force. Gardner has also brought state law claims against Havard for false arrest and false imprisonment. Deputy Havard defends by stating qualified immunity bars all these claims brought against him by the plaintiff.

### A. Federal Qualified Immunity Standard

■ Qualified immunity "reconcile[s] two competing interests. One· interest is the compensation of persons whose federally protected rights have been violated. Opposing this is the fear that personal liability will inhibit public officials in the discharge of their duties." *Johnston v. City of Houston,* 14 F.3d 1056, 1059 (5th

Cir.1994). The Fifth Circuit has noted that the "[a]brogation of qualified immunity is properly the exception, not the rule." *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir.1994). The Fifth Circuit has recognized that "the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir.1994) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). The analysis of a qualified immunity claim requires the court: (1) to determine whether the plaintiff has alleged a violation of a clearly established constitutional right and (2) if so, then the court must decide if the defendant's conduct was objectively reasonable. *Rankin v. Klevenhagen*, 5 F.3d 103, 105 (5th Cir.1993). When the court has a clear picture of what has occurred during an incident giving rise to a qualified immunity defense, the reasonableness question becomes one of law. *See Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir.1993) (acknowledging that qualified immunity should normally be determined by the court).

*B. Gardner's Federal Claims Against Havard are not Barred by Qualified Immunity*

1. The Unlawful Arrest Claim

■ An individual has a clearly established right to be free from unlawful arrest. *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir.1992). As such, Gardner alleged a violation of a clearly established constitutional right and the court now needs to decide if the officer's conduct was objectively reasonable.

■ In this case, Havard does not argue that he acted reasonably in arresting Gardner, but rather he claims that he did not arrest the plaintiff. Havard argues that Hill arrested Gardner without any input from him and without any personal involvement from him. In order to hold an officer liable under § 1983, the officer must become personally involved in the claimed tort. *Murphy v. Kellar*, 950 F.2d 290, 292 n. 7 (5th Cir.1992). Gardner, however, has presented summary judgment evidence in the form of his own affidavit and the affidavit of Clifton Johnson showing that Hill and Havard discussed whether to take Gardner to jail and whether they thought Gardner was intoxicated. Furthermore, according to his own deposition testimony, Deputy Havard attempted to frisk Gardner and he, not Hill, handcuffed the plaintiff and put him in the police car. While Havard denies that he had any input or personal involvement in arresting Gardner, the summary judgment evidence seems to indicate otherwise. Taking the summary judgment evidence in a light most favorable to Gardner, the court cannot find that Havard had no input or personal involvement in the arrest of Gardner.

While Gardner does not claim reasonableness as a defense to Gardner's unlawful arrest claim, this court will still consider the issue, but is unable to determine that the officer's conduct was objectively reasonable. Basically, the issue of reasonableness in this case amounts "to a swearing match in the most classic sense." *Mossey v. City of Galveston, Texas*, 94 F.Supp.2d 793, 797 (S.D.Tex.2000). Officer Havard has brought forward summary judgment evidence consisting of his own and Deputy Hill's depositions that tends to show that the officers observed Gardner with red, glossy eyes and acting irrationally. These depositions further show that as Havard attempted to perform a protective frisk, Gardner shoved Havard away. According to this information, the officers arguably satisfied their burden of establishing probable cause to arrest. On the other hand, Gardner denies all these statements and presents summary judgment

evidence, which shows that Gardner did not have red, glossy eyes, did not act irrationally, and did not push Havard. Gardner's evidence shows that he was merely talking to Hill when Havard grabbed his arms, shoved him against a car, and handcuffed him. No other independent evidence, like a Breathalyzer or a videotape of the incident, exists. Thus, the reasonableness of Havard's actions depend upon whose version of the facts one believes. Because the facts necessary to determine whether Havard's actions were objectively reasonable are hotly disputed and create a genuine issue of material fact, Havard is not entitled to qualified immunity with regard to Gardner's unlawful arrest claim. *See Williams v. Bramer,* 180 F.3d 699, 704 (5th Cir.1999) (reversing a district court's grant of qualified immunity when officer's and plaintiff's versions of incident differ and viewing facts in favor of plaintiff's version at the summary judgment stage); *Mossey,* 94 F.Supp.2d at 798 (holding that when the facts necessary to decide whether an officer acted reasonably are in "hot dispute," the officer is not entitled to qualified immunity). As such, Havard's Motion for Summary Judgment on this issue is DENIED.

### 2. The Excessive Use of Force Claim

 Established law clearly provides that a citizen has a right to be free from the use of excessive force by police officers. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). As such, Gardner has alleged a violation of a clearly established constitutional right and the court now needs to decide if the officer's conduct was objectively reasonable. Like the analysis of Havard's qualified immunity defense for Gardner's unlawful arrest claim, the reasonableness of Havard's actions regarding the excessive use of force claim depends upon whose version of the facts one believes. Gardner's evidence shows that he

was simply talking to Deputy Hill when Havard grabbed his hands, shoved him against a car, and handcuffed him. Havard tells a different story and no other independent evidence exists. Basically, it is Hill and Havard's word against Gardner and Johnson's. As such, Havard's Motion for Summary Judgment regarding Gardner's excessive use of force claim is DENIED.

### C. State Qualified Immunity Standard

 Police officers are entitled to official immunity when performing discretionary duties in good faith within the scope of their authority. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex. 1994); *Vasquez v. Hernandez,* 844 S.W.2d 802, 804 (Tex.App.-San Antonio 1992, writ dism'd w.o.j.). To establish good faith as a matter of law, Havard assumed the burden to show that a reasonably prudent officer, under the same or similar circumstances, could have believed that his actions were justified. *See Chambers,* 883 S.W.2d at 656–57; *Antu v. Eddy,* 914 S.W.2d 166, 171 (Tex.App.-San Antonio1995, no writ). In cases involving force used during an arrest, courts have articulated this standard as whether "a reasonably prudent officer might have believed that force was necessary." *Victory v. Bills,* 897 S.W.2d 506, 509 (Tex.App.-El Paso 1995, no writ); *see City of Harlingen v. Vega,* 951 S.W.2d 25, 31 (Tex.App.-Corpus Christi 1997, no writ). In a false arrest case, the officer is required to show that a reasonably prudent officer might have believed the appropriate course of action was to make the arrest. *See Texas Dep't of Public Safety v. Perez,* 905 S.W.2d 695, 699 (Tex.App.-Houston [14th Dist.] 1995, writ denied).

### D. State Law Immunity does not Bar Gardner's False Arrest and False Imprisonment Claims Against Havard

This "he said-he said" battle of affidavits and depositions raises a fact issue regard-

ing the reasonableness of Havard's actions, thereby precluding summary judgment. Whether a reasonably prudent officer in Havard's position could have perceived the need to use force or to arrest again depends upon which version of the facts one believes. While a reasonable officer could have perceived the need to take Havard's actions on the facts as recited by Havard and Hill, reasonable minds could differ about that conclusion when looking at all the facts presented by the summary judgment evidence and especially when looking at the summary judgment evidence in a light most favorable to Gardner. *See, e.g., Martinez v. Mikel,* 960 S.W.2d 158 (Tex. App–San Antonio 1997, no writ). As such, the court cannot find that Havard acted as a reasonably prudent officer, and Havard's Motion for Summary Judgment regarding Gardner's state law claims of false arrest and false imprisonment is DENIED.

## V. Gardner's Intentional Infliction of Emotional Distress Claim Against Havard and Hill

 Gardner has also brought a state law intentional infliction of emotional distress claim against Havard and Hill. The officers argue in their motion for summary judgment that their conduct was not so extreme and outrageous in character and degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *See Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993). Again, because of the factual dispute involved in this case, the court cannot grant the officers' motion for summary judgment with respect to this claim. As such, Havard and Hill's Motion for Summary Judgment on Gardner's intentional infliction of emotional distress claim is DENIED.

It is, therefore,

ORDERED, that Defendants' Motion for Summary Judgment is hereby GRANTED in PART and accordingly Plaintiff's claims against Defendant Angelina County are DISMISSED with PREJUDICE. It is, further,

ORDERED, that Defendants' Motion for Summary Judgment is hereby DENIED in PART and accordingly Plaintiff's claims against Defendant Havard and Defendant Hill may proceed.