TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





ON MOTION FOR REHEARING






NO. 03-96-00130-CV





Milton O'Bryant; Leonard Hendon, Jr.; Jimmie Cross; Joe Ortiz;

and Marvin Rasco, Appellants


v.


City of Midland; Richard L. Czech, Individually and in his Official Capacity as Chief of
Police, City of Midland Police Department; and J. W. Marugg, Individually and in his Official
Capacity as Lieutenant, City of Midland Police Department, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT

NO. 93-15048, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING





 Our opinion and judgment issued March 6, 1997, are withdrawn, and the following is
issued in lieu thereof.

 Appellants are several police officers who sued their supervisors and the city that employed
them, alleging the defendants had committed unlawful employment practices. The trial court adjudicated
the multiple statutory, constitutional, and common law causes of action and two affirmative defenses by
granting summary judgment in favor of the defendants. We will affirm in part, reverse in part, vacate a
portion of the judgment, dismiss one cause of action, and remand some causes for further proceedings.

BACKGROUND

 In 1982, appellant Milton O'Bryant began working as a licensed police officer for the City
of Midland Police Department. In 1989, O'Bryant suffered a back injury while performing a physical
strength test. In 1992, O'Bryant sued the Department (1) in federal court, alleging violations of the Americans
with Disabilities Act ("ADA"). See 42 U.S.C.A. § 12101-12213 (West 1995). The record does not
reveal the disposition of that lawsuit. 

 Sometime in 1993, the Department discussed changing the job descriptions and
requirements for some of its employment positions. In conjunction with these changes, the Department
initiated a "temporary light duty" policy for injured officers. In accordance with this new policy, an injured
officer could remain on light duty status for a limited period of time without being required to perform all
the regular duties of a police officer. The Department also discussed "civilianizing" (2) some of its employment
positions. 

 As a result of these changes, O'Bryant was put on temporary light duty status. O'Bryant
then sued the Department (3) a second time in a class action, presumably complaining the Department's
activities constituted unlawful employment discrimination. Appellants Cross, Hendon, Ortiz, and Rasco,
officers who also alleged they suffered disabilities, joined the second lawsuit. For reasons not apparent in
the record, the group voluntarily dismissed the class action.

 After the class action was filed, each officer allegedly suffered what he considered to be
negative or retaliatory action at the hands of the Department. The positions of O'Bryant, Cross, Rasco,
Ortiz, and Hendon were eventually civilianized. Ortiz and Rasco were reassigned more dangerous and
stressful shifts than they had previously worked. O'Bryant and Cross remained in their newly civilianized
positions but their salaries were reduced in conjunction with the reclassification. When the Department later
created a new position, O'Bryant and Cross were "bypassed" in the selection process, despite their
professed interest in the position. Finally, Hendon was subjected to disciplinary proceedings for his
involvement in two incidents, namely a high-speed chase and a minor traffic accident. Hendon also
complains the Department initially denied him overtime pay he requested, although he ultimately received
the pay. 

 The Department responds that each of its actions was justified under the attendant
circumstances. The officers, on the other hand, contend the Department's stated reasons for taking the
negative actions were mere pretext. The officers allege the Department treated them negatively because
of their disabilities and their attempts to hold the Department accountable for unlawful discrimination. 
According to the officers, a Department employee overheard a conversation in which their supervisor,
Lieutenant Marugg, expressed a desire to "do something about" the officers involved in the class action,
suggesting that management might have treated the officers negatively because of their involvement in the
lawsuit.

 Following the Department's alleged retaliation for their participation in the first two lawsuits,
the officers initiated the instant lawsuit. They sued the City of Midland, Chief of Police Czech, and
Lieutenant Chief of Police Marugg, in both their individual and official capacities. The most recent amended
pleading alleges the following causes of action: tortious interference with contractual employment
relationships; intentional infliction of emotional distress and economic injury; negligence and gross
negligence; breach of a claimed duty of good faith and fair dealing; substantive and procedural due process
violations under the Texas Constitution; violations of the right to free speech under the Texas Constitution;
and unlawful employment discrimination and retaliation under the Texas Labor Code. 

 The defendants moved for summary judgment on several grounds, claiming the officers did
not have the authority to bring some of the claims, asserting official and sovereign immunity, and attacking
the merits of the officers' claims as well. The trial court granted the motion as to all causes of action but
did not state the basis for its ruling. The officers appeal the order in seven points of error. 


STANDARD OF REVIEW

 In seeking summary judgment, a movant must show there is no general issue of material fact
and that it is entitled to judgment as a matter of law. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985). In deciding whether there is a disputed material fact issue precluding
summary judgment, the trial court must take evidence favorable to the nonmovant as true. Id. 
Furthermore, the court must indulge every reasonable inference in favor of the nonmovant and resolve any
doubts in the nonmovant's favor. Id. 

 When a defendant seeks to obtain summary judgment based on a plaintiff's inability to
prove its case, the defendant must conclusively disprove at least one element of each of the plaintiff's causes
of action. Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991). Only if a defendant disproves
one of the essential elements of one of the plaintiff's causes of action does the plaintiff carry the burden of
producing controverting evidence and raising a fact issue as to the negated element. See City of Houston
v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). Conversely, a defendant seeking
summary judgment based on an affirmative defense has the burden of proving conclusively every element
of the defense. See, e.g., Kassen v. Hatley, 887 S.W.2d 4, 8 (Tex. 1994). A defendant is not entitled
to judgment as a matter of law on an affirmative defense if the plaintiff supplies evidence such that
reasonable minds could differ on any material fact issue relevant to the defense. See Kassen, 887 S.W.2d
at 9.

 Because the propriety of a summary judgment is a question of law, we review the trial
court's decision de novo. See, Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). When
a trial court does not state the basis for its decision in its summary judgment order, we must uphold the
order if any of the theories advanced in the motion are meritorious. Rogers v. Ricane Enters., Inc., 772
S.W.2d 76, 79 (Tex. 1989). Conversely, we must reverse the order if we find no valid legal basis in the
motion. Because the trial court did not state the basis for its ruling, we will assume for purposes of this
opinion that the court agreed with each of the defendants' contentions in their motion. Accordingly, we will
address each contention in turn.


DISCUSSION

Official Immunity

 Lieutenant Marugg and Chief Czech allege in their motion for summary judgment that they
were entitled to official immunity from the officers' claims. (4) In their first point of error, the officers contend
the trial court erred in granting summary judgment on official immunity grounds. Government employees
are entitled to immunity from suit arising from (1) the performance of their discretionary duties (2) in good
faith (3) so long as they are acting within the scope of their authority. City of Lancaster v. Chambers,
883 S.W.2d 650, 653 (Tex. 1994). Official immunity is an affirmative defense. Id. Thus, we must
determine whether the defendants conclusively established each element of the defense and, if so, whether
the officers produced proof creating a material fact issue as to any element of the defense. See Kassen,
887 S.W.2d at 8; Clear Creek Basin Auth., 589 S.W.2d at 678.

 The officers argue on appeal that the defendants' negative actions were motivated by illegal
purposes. The defendants respond that their motivations were pure. The controversy centers, therefore,
on the second element of official immunity. (5) 

 The Texas "good faith" standard is derived from the federal standard, a test of objective
legal reasonableness. Chambers, 883 S.W.2d at 656. A summary judgment movant can satisfy the good
faith requirement of official immunity by showing a reasonably prudent official, under the same or similar
circumstances, could have believed that the action complained of was warranted. Id. at 656-57. This
element of the test is designed to ensure that officials who act in good faith, even negligently, are protected. 
See id. at 655, 656 n.5. The doctrine of official immunity does not, however, protect officials who
knowingly violate the law. Id. at 656. 

 Our review of the summary judgment proof reveals that the defendants initially proved good
faith. In an affidavit, Chief Czech explained that he redesigned job descriptions, created new positions, and
civilianized other positions in response to the growing demand for law enforcement services and the limited
resources available to provide those services. He specifically denied taking the actions in retaliation for the
officers' involvement in the lawsuits against the Department. Czech further explained that he could not
place Officers O'Bryant and Cross in patrol positions, which required licensure and imposed additional
duties upon those filling them, because both suffered from debilitating conditions and neither produced a
physician's release to participate in activities required of licensed officers. He also noted that neither
O'Bryant nor Cross could perform the duties imposed by statute upon commissioned police officers. See,
e.g., Tex. Code Crim. Proc. Ann. arts. 2.13-2.16 (West 1997). Czech also claimed he notified Officers
Hendon, Rasco, and Ortiz of the civilianization of their positions and their planned transfers to patrol duty
before the three became involved in the class action. This evidence suggests Czech's actions with respect
to these three officers were not retaliatory. Finally, Czech denied that he subjected Officer Hendon to any
unwarranted negative treatment. According to Czech, the only adverse action Hendon ultimately suffered
was disciplinary action for his involvement in a minor traffic accident. Specifically, Czech explained that
Officer Hendon had made an illegal turn in a police vehicle, failed to exhibit concern for the well-being of
the citizens involved in an ensuing accident, treated them disrespectfully, and lied to them. The discipline
for these actions was imposed only after extensive investigation of the incident. This evidence suggests that
Czech believed his actions were warranted under the circumstances.

 Similarly, the summary judgment proof suggests that Lieutenant Marugg acted in good faith. 
For example, Marugg's affidavit corroborates much of the information in Czech's affidavit. Furthermore,
Marugg specifically denied saying that he planned to "do something about" the officers involved the class
action lawsuit. Marugg also explained that he originally denied Hendon's overtime requests because he
(1) thought it was against Department policy to pay officers for time they spent testifying as victim
witnesses, and (2) thought it inappropriate to pay Hendon for travel time that would not have been
necessary if Hendon had stayed at the office to complete the work. These statements suggest Marugg
thought he had a valid basis for his actions.

 Also appended to the summary judgment motion were numerous copies of internal office
memoranda and correspondence that substantiated Czech and Marugg's account of the details surrounding
the events in question. Most importantly, the proof contained affidavits from several supervisors in other
municipal police departments. The affiants from the other departments stated they were aware of the
defendants' actions and thought the actions reasonable in light of the surrounding circumstances. The
statements by members of other police departments corroborated Marugg's and Czech's assertions that
their actions were reasonable. The proof as a whole constitutes a prima facie showing of good faith.

 Because the movants supplied proof of their defense, we must look to the officers'
response and determine if it raised a material fact issue. See Clear Creek Basin Auth., 589 S.W.2d at
678. In order to controvert a movant's prima facie case on this issue, a nonmovant must show no
reasonable person in the official's position could have thought the facts were such that they justified the
official's action. Chambers, 883 S.W.2d. at 657. The nonmovant's hurdle seems difficult to leap because
often even an intentional, ill-motivated action may be explained by some plausible, yet hypothetical,
rationale. Although the nonmovant must satisfy an elevated standard of proof, id. at 656, the burden is not
impossible to meet. Summary judgment proof is to be viewed in the light most favorable to the nonmovant,
with all doubts resolved in favor of the nonmovant. Nixon, 690 S.W.2d at 548-49. The synthesis of these
two principles results in the following standard: a nonmovant seeking to defeat summary judgment on the
issue of good faith must show no reasonable person in the official's position could have thought the
nonmovant's version of the facts justified the action. (6)

 The officers' response to the motion for summary judgment controverts Czech's and
Marugg's motion on the issue of good faith. First, Officer O'Bryant alleged in his affidavit that he was
treated differently from other officers with disabilities. O'Bryant further alleged that another officer had
reported to him that Marugg and a deputy chief were conspiring to "do something about" the "guys"
involved in the class action. O'Bryant's allegation that Marugg was overheard making this statement was
corroborated by a copy of a handwritten note, purportedly written by the officer who overheard the
conversation. Moreover, O'Bryant pointed out that the final decision to civilianize the officers' positions
was made after the officers filed the class action lawsuit. These statements, when taken as true, could
reasonably suggest O'Bryant was treated differently because of his disability or his legal efforts and not
because he was unable to do the job of a police officer. Indeed, the evidence indicating that Marugg stated
"we've got to do something about those guys in the class action suit" could reasonably be construed as
incriminating the supervisors with respect to their treatment of all five plaintiff officers. (7)

 Other responsive documentation includes an affidavit by Officer Rasco, who stated that
his disability, a heart condition, was exacerbated by his assignment to a more stressful patrol. He suggested
other disabled and older officers had not been assigned to such stressful patrols in the past. This statement,
when taken as true, could reasonably suggest Rasco may have been given an unduly stressful assignment
either to get him to quit his job because of his disability, or because of his involvement in the class action
lawsuit.

 Officer Ortiz supplied an affidavit that said he had been offered, upon civilianization of his
previous position, a patrol assignment at the airport. Ortiz indicated he wanted the airport assignment. 
After the Department received notice of the class action lawsuit, however, Officer Ortiz was denied the
airport assignment and placed instead on a more stressful patrol. This evidence, when taken as true, could
reasonably imply the Department may have assigned Ortiz to the more stressful work in response to his
involvement in the class action. 

 In reviewing the summary judgment order, we express no opinion on whether the proof
supporting the officers' response preponderates against the proof supporting the defendants' motion. We
simply review the officers' proof to determine whether a fact issue exists as to the "good faith" element of
the official immunity defense. We hold the proof the officers supplied in response to the motion for
summary judgment, when taken as true pursuant to Nixon, was sufficient to raise a material fact issue as
to whether Marugg and Czech acted in good faith in reassigning, reclassifying, disciplining, and managing
the officers. Although the proof is conflicting, especially on the disability issues, it does suggest Marugg and
Czech's actions may have been motivated by illegal purposes. It further suggests that no person in
Marugg's and Czech's positions could reasonably believe the officers' legal activities warranted
reassignment, demotion, disparate treatment, or other negative action. Because there existed a genuine
issue with respect to the material fact of the defendants' good faith, we do not agree with the trial court's
summary judgment disposition of the causes against Marugg and Czech in their individual capacities on
official immunity grounds. Accordingly, we sustain the officers' first point of error.


Sovereign Immunity

 In its motion for summary judgment, the City asserted it was immune from suit based on
the official immunity of Lieutenant Marugg and Chief Czech. Because we have decided that Marugg and
Czech failed to establish their official immunity as a matter of law at the summary judgment stage, we hold
the trial court erred in finding the City enjoyed derivative sovereign immunity. (8) We, therefore, sustain the
officers' second point of error.


Equitable Relief for Violations of Texas Constitution

 In their petition, the officers sought back pay and reinstatement as remedies for alleged
violations of their constitutional rights. Marugg, Czech, and the City moved for summary judgment on the
grounds that the officers may not seek monetary relief for violations of their constitutional rights, citing City
of Beaumont v. Bouillion. See 896 S.W.2d 143, 149 (Tex. 1995). In Bouillion, the Texas Supreme
Court held that the Texas Constitution does not create a private right of action for money damages, but that
this rule does not preclude plaintiffs from seeking "equitable" relief for violations of their constitutional rights. 
Id. The Court mentioned injunctive relief as an example of an equitable remedy, but did not list any other
examples. See id. The trial court apparently believed equitable relief can never include monetary relief,
and thus granted summary judgment based on its interpretation of Bouillion. 

 The officers argue Bouillion does not preclude all requests for monetary relief because
equitable relief sometimes includes an award of money. They cite an earlier decision from this Court as
support for their claim that equitable relief can include back pay. See City of Austin v. Gifford, 824
S.W.2d 735, 743-44 (Tex. App.--Austin 1992, no writ). However, we did not hold in Gifford that back
pay is always an equitable remedy. Gifford was brought under the Texas Human Rights Act, which gives
a court authority to grant an "equitable award of back pay." See Tex. Labor Code Ann. § 21.001-.306
(West 1996). We find no other authority, and the officers provide us with none, for engrafting the
characterization of a claim for back pay in the Texas Human Rights Act onto all other claims for back pay.

 Instead, to determine whether the officers' request for back pay under the constitution is
an equitable claim, we look to the general distinction between actions at law and actions in equity. Because
Texas courts today may entertain both types of actions in one lawsuit, the distinction is difficult to discern
in modern caselaw. Historically, the difference between the two types of actions depended upon the nature
of the relief desired. See 1 Tex. Jur. 3d Actions § 39 (1993); 1A C.J.S. 2d Actions § 124 (1985). 
Typically, an action "at law" is one brought for a money judgment while an action "in equity" is one brought
for other types of relief, such as injunction, specific performance, rescission, or cancellation. See 1 Tex.
Jur. 3d Actions § 39 (1993); 1A C.J.S. 2d Actions § 127-28 (1985); see also Cooley v. Buie, 291 S.W.
876 (Tex. Comm'n App. 1927, holding approved). It is also instructive to look to the parties'
characterization of the relief sought in their pleadings to determine the legal character of an action. See 1A
C.J.S. 2d Actions § 126 (1985). 

 In light of these principles, we conclude the officers' request for back pay for violations of
their constitutional rights is essentially an action at law. The officers do not seek money to compensate them
for services rendered; nor do they seek to prevent the defendants from being unjustly enriched. Instead,
they seek money because they were prevented from conferring a certain type of benefit to the defendants
(i.e. serving as licensed police officers), a theory not based in traditional equitable principles. Our
conclusion is consistent with the general rule that an action for monetary relief is an action at law rather than
in equity. Equally consistent with this conclusion is the officers' characterization of the relief they request
in their most recent amended petition. In that pleading, the officers included "lost wages" under the heading
of "damages"; on the other hand, they sought "injunctions" under the heading of "equitable remed[ies]." 
Cf. Jones v. City of Stephenville, 896 S.W.2d 574, 577-78 (Tex. App.--Eastland 1995, no writ)
(general request for equitable relief in prayer not sufficient to constitute proper request for "equitable
protection" for a constitutional violation).

 Moreover, we believe the officers' request for back pay in conjunction with a violation of
their constitutional rights is the type of action the supreme court declared unauthorized in Bouillion. We
agree that Bouillion does not expressly address the issue of whether constitutional violations may be
remedied with an equitable award of money. Although the court in Bouillion did not expressly state that
equitable relief can never include a money judgment, the court repeatedly distinguished "money damages"
from "equitable relief." This suggests the inclusion of money in an award takes it out of the realm of
equitable relief, at least with respect to Texas constitutional claims. We previously interpreted Bouillion
this way in Dear v. City of Irving, 902 S.W.2d 731, 736 (Tex. App.--Austin 1995, writ denied). It
appears that other courts interpret Bouillion as a prohibition on all awards of money under the constitution
because our review of the caselaw applying Bouillion reveals no cases awarding money judgments for
constitutional violations. See, e.g., Univ. of Tex. System v. Courtney, No. 2-94-201-CV, slip op. at 8-9
(Tex. App.--Fort Worth May 1, 1997, no writ h.); Vincent v. West Tex. State Univ., 895 S.W.2d 469,
475 n.6 (Tex. App.--Amarillo 1995, no writ); Harris County v. Going, 896 S.W.2d 305, 308 (Tex.
App.--Houston [1st Dist.] 1995, writ denied). While we do not hold that equitable relief can never include
an award of money, until the supreme court instructs us otherwise, we will follow the court's suggestion in
Bouillion that the constitution does not authorize suits for monetary relief. We overrule the officers' third
point of error insofar as it pertains to back pay.

 Conversely, we do consider reinstatement to be an equitable remedy per se. See
Courtney, slip op. at 9; Going, 896 S.W.2d at 308-309. The officers assert on appeal that the trial court
erred in ruling reinstatement is not allowed for constitutional violations. We sustain the officers' third point
of error insofar as it pertains to reinstatement.


Tortious Interference with Contract

 The officers sought to hold Marugg and Czech liable for tortious interference with the
officers' employment contract with the City. In order to prevail on this cause of action, the officers were
required to prove (1) the existence of a contract subject to interference, (2) the occurrence of an act of
interference that was willful and intentional, (3) that the act was a proximate cause of their damage, and (4)
that actual damage or loss occurred. See Holloway v. Skinner, 898 S.W.2d 793, 795-96 (Tex. 1995). 
The City moved for summary judgment, alleging Marugg and Czech could not have been liable under the
doctrine as a matter of law because Marugg and Czech are agents of the entity with which the officers had
an employment contract. (9) 

 This doctrine generally applies only to interference committed by a third party, or stranger,
to the contract. Id. at 795. However, when a defendant is both an agent of a party to the contract and the
person accused of tortious interference, a plaintiff may assert the cause of action by additionally proving
the defendant acted so contrary to the principal's interests that his actions could only have been motivated
by personal interests. Id. at 796-798. This additional requirement preserves the logically necessary rule
that a party cannot tortiously interfere with its own contract. Id. Where reasonable minds can differ on
this issue, summary judgment will not stand. Lassiter v. Wilkenfeld, 930 S.W.2d 803, 808 (Tex.
App.--Beaumont 1996, writ requested). 

 The defendants made a prima facie showing that they acted in the City's best interest. For
instance, the defendants averred they took their actions in order to save the City money and operate more
efficiently. We must determine, therefore, whether the officers' response raised a fact issue as to whether
Czech and Marugg acted in their personal interests and contrary to the City's interest. 

 We conclude the officers' summary judgment proof does not raise a fact issue as to
whether Marugg and Czech acted in their personal interests and contrary to the City's interests. 

As detailed above, the officers produced some evidence that indicated Marugg and Czech acted in bad
faith (i.e., wanted the officers off the force because the officers were disabled and had filed lawsuits). 
However, the officers produced no evidence suggesting Marugg and Czech would profit personally from
the officers' absence. Furthermore, the officers produced no evidence suggesting Marugg and Czech's
actions harmed the City. We hold that the defendants were entitled to judgment as a matter of law on this
issue. We overrule the officers' fourth point of error.


Intentional Infliction of Emotional Distress

 The officers pleaded that the City, Marugg, and Czech had intentionally inflicted emotional
distress and economic injury on the officers. To establish liability under the doctrine of intentional infliction
of emotional distress, the officers were required to prove (1) the defendants acted intentionally or
recklessly, (2) the conduct was "extreme and outrageous," (3) the defendants' actions caused the officers
emotional distress, and (4) the resulting emotional distress was severe. See Wornick v. Casas, 856
S.W.2d 732, 734 (Tex. 1993). 

 The controversy in this case centers around the second element of the cause of action
because the defendants moved for summary judgment on the ground that their conduct was not extreme
and outrageous. This element may appropriately be decided at the summary judgment stage. Id. 
"Outrageous conduct" is that which exceeds all possible bounds of decency, and is regarded as atrocious
and utterly intolerable in a civilized community as a matter of law. Id. 

 The defendants gave many reasonable explanations for taking the offensive actions. For
example, the defendants claimed Officers Rasco and Ortiz were given dangerous patrols at their request,
albeit after their original positions were civilianized. Furthermore, they claimed Officers O'Bryant and
Cross were refused patrol positions for their own safety and the safety of others. The officers, on the other
hand, produced some evidence, detailed above, supporting the idea that Marugg and Czech acted in
retaliation for the officers' involvement in the lawsuits. We decline to hold that retaliating against an
employee for disclosing illegal activity is not utterly intolerable as a matter of law. (10) Because we must
accept the officers' responsive summary judgment proof as true, and because we believe reasonable minds
could think the officers' version of the defendants' conduct was extreme and outrageous, we hold a fact
issue existed with respect to whether the defendants' conduct was extreme and outrageous. We sustain
the officers' fifth point of error insofar as it relates to the claim for intentional infliction of emotional distress.

 The defendants also argued in their motion for summary judgment that there is no cause of
action in Texas for "intentional infliction of economic injury." The officers do not expressly challenge the
court's implied ruling on this point, nor do they cite any authority for the existence of such a cause of action;
therefore, we overrule the officer's fifth point of error insofar as it relates to a claim for intentional infliction
of economic injury.


Duty of Good Faith and Fair Dealing

 In their pleadings, the officers alleged that the defendants breached a duty of good faith and
fair dealing when they took the offensive actions. A duty of good faith and fair dealing may arise as a result
of a special relationship between parties. Arnold v. National County Mut. Fire Ins. Co., 725 S.W.2d
165, 167 (Tex. 1987). The requisite "special relationship" may be created by the existence of a contract
and a disparity in the bargaining power of the parties to the contract. Natividad, 875 S.W.2d at 697. 

 The defendants moved for summary judgment on this issue, arguing no special relationship
existed between the officers and the City. The defendants cited two supreme court cases, contending no
duty of good faith and fair dealing can arise in an employment context. See Winters v. Houston Chronicle
Publishing Co., 795 S.W.2d 723, 724-25 n.2 (Tex. 1990); Federal Express Corp. v. Dutschmann,
846 S.W.2d 282, 284 n.1 (Tex. 1993). 

 We disagree with the trial court's implied holding that, as a matter of law, no duty can ever
arise in an employment context. The supreme court in Winters and Dutschmann declined to impose a
general duty in employment contexts. See id; see also McClendon v. Ingersoll-Rand Co., 779 S.W.2d
69, 71 (Tex. 1989), rev'd on other grounds, 498 U.S. 133 (1990), on remand, 807 S.W.2d 577
(1991). The court did not rule out the possibility, however, that a duty might arise in an employment
relationship involving a right to continued employment, rather than an at-will relationship. The defendants
did not establish as a matter of law that no right to continued employment existed between the defendants
and the officers. Because we do not agree with the trial court's interpretation of the supreme court's
discussions in Winters and Dutschmann, and because the officers may have been able to establish the
existence of a right to continued employment, we sustain the officers' sixth point of error. (11)

Texas Labor Code

 The officers pled unlawful employment discrimination and retaliation under sections 21.051
and 21.055 of the Texas Labor Code. See Tex. Labor Code Ann. §§ 21.051, .055 (West 1996). The
defendants moved for summary judgment, alleging the officers' claims against Marugg and Czech were not
cognizable under the Labor Code because Marugg and Czech were not employers. The defendants also
alleged the officers should not prevail on the merits of the discrimination and retaliation claims. The officers
challenge the trial court's ruling on the merits of the Labor Code claims.

 We do not address the officers' point of error because we hold the trial court did not have
jurisdiction to hear the officers' Labor Code claims. An employee claiming a violation of the unlawful
employment practices provisions of the Texas Labor Code must exhaust his or her administrative remedies
before bringing a civil action for such violation. Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483,
485-88 (Tex. 1991); Vincent, 895 S.W.2d at 473. In order to avail themselves of administrative
remedies, the officers should have filed a complaint with the Texas Commission on Human Rights within
180 days of the alleged offense. See Tex. Labor Code Ann. §§ 21.201, .202 (West 1996); Schroeder,
813 S.W.2d at 486. The filing of a complaint with the commission is a mandatory, jurisdictional
prerequisite to the assertion of claims under the relevant provisions of the Labor Code. See Schroeder,
813 S.W.2d at 486. Furthermore, a person who has initiated a civil action in a court of law based on an
allegedly unlawful employment practice may not file a complaint under the Labor Code for the same
grievance. Tex. Labor Code Ann. § 21.211 (West 1996). As these statutory provisions make clear, a
person may not seek relief under both the administrative scheme of the Labor Code and other civil
remedies at law. See Schroeder, 813 S.W.2d at 487. Because the officers failed to satisfy the requisites
of the statute by filing a complaint with the Texas Commission on Human Rights and because they instead
elected to avail themselves of alternate civil relief, the trial court did not have subject matter jurisdiction over
the Labor Code claims.

 We may address defects in subject matter jurisdiction for the first time on appeal on our
own motion. Texas Workers' Compensation Comm'n v. Garcia, 893 S.W.2d 504, 536 n.15 (Tex.
1995). Because the trial court lacked jurisdiction over these claims, we have jurisdiction only to vacate
the trial court's judgment on this issue and dismiss the Labor Code causes of action. See, e.g., Dallas
County Appraisal v. Funds Recovery, 887 S.W.2d 465, 471 (Tex. App.-Dallas 1994, writ denied). 
Accordingly, we vacate the trial court's summary judgment insofar as it relates to the Labor Code claims
and dismiss the Labor Code claims.


CONCLUSION


 For the foregoing reasons, we affirm the trial court's judgment in favor of: (1) Marugg and
Czech, in both their individual and official capacities, on the officers' claim of tortious interference with a
contractual relationship; (2) all defendants on the officers' claim of intentional infliction of economic injury;
and (3) all defendants on the officers' request for back pay in conjunction with alleged violations of the
Texas Constitution.

 We reverse the trial court's judgment in favor of: (1) Marugg and Czech based on official
immunity from suit against them in their individual and official capacities; (2) the City based on derivative
sovereign immunity; (3) all defendants on the officers' claim of intentional infliction of emotional distress;
(4) all defendants on the officers' request for reinstatement in conjunction with alleged constitutional
violations; and (5) all defendants on the officers' claim of a breach of a duty of good faith and fair dealing. 
We sever these claims from the rest of the suit.

 We vacate the judgment of the trial court insofar as it pertains to the officers' claims under
sections 21.051 and 21.055 of the Texas Labor Code and dismiss those claims. We remand the severed
causes of action for resolution in proceedings not inconsistent with this opinion. 



 ______________________________________

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed in Part; Reversed and Remanded in Part; Vacated in Part; Dismissed in Part

Filed: June 26, 1997

Publish
1. The record does not reveal the particular entities and persons O'Bryant sued. The record does
imply, however, that O'Bryant sued representatives of the City, the City itself, the Police Department, or
a combination of those entities and persons. For convenience, we will refer to the defendants in the suit
as "the Department."
2. Before a person can be appointed to a municipal police officer position, he or she must be
licensed by the Commission on Law Enforcement Officer Standards and Education (TCLEOSE). Tex.
Gov't Code Ann. §§ 415.001(5), .051 (West 1990); Tex. Code Crim. Proc. Ann. art. 2.12(3) (West
Supp. 1997). To secure a license, an officer must, among other things, complete certain training, pass an
examination, be declared psychologically fit, and demonstrate weapons proficiency. Tex. Gov't Code Ann.
§ 415.052(a) (West 1990). The Department revealed its intent to "civilianize" some of its positions
formerly filled by licensed officers by removing the requirement that the positions be filled by licensed
officers. The Department contends it intended to civilianize the jobs because they could be performed by
persons untrained as police officers.
3. Again, the record does not reveal the particular entities and persons O'Bryant sued. For
convenience, we will refer to the defendants in the class action as "the Department."
4. We assume Marugg and Czech asserted this defense in their individual capacities. The doctrine
of official immunity does not protect officials from suits against them in their official capacities. See Dear
v. City of Irving, 902 S.W.2d 731, 735, 737 (Tex. App.--Austin 1995, writ denied); Gonzalez v.
Avalos, 866 S.W.2d 346, 349 (Tex. App.--El Paso 1993), dism'd w.o.j., 907 S.W.2d 443 (1995);
Baker v. Story, 621 S.W.2d 639, 643 (Tex. App.--San Antonio 1981, writ ref'd n.r.e.). An official sued
in an official capacity should assert the defense of sovereign immunity. Id.; Bagg v. Univ. of Tex. Medical
Branch, 726 S.W.2d 582, 586 (Tex. App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.).
5. Even if the officers challenged the court's determination of the other two elements of the defense,
we would agree with the trial court's judgment on those issues. The defendants took their actions in the
course of carrying out administrative and personnel management duties listed in their job descriptions and
made a part of the summary judgment record. Specifically, Czech was charged with: allocating resources;
establishing appropriate staffing levels; disciplining staff; and assuming full management responsibility for
all department services and activities. Marugg was charged with managing and supervising the patrol shift
and division, participating in development and implementation of goals, objectives, policies, and priorities,
identifying resource needs, disciplining staff, and assigning work activities. Such duties are discretionary
because they involve personal deliberation, decision, and judgment. Cf. Chambers, 883 S.W.2d at 654;
Kassen, 887 S.W.2d at 10 (suggesting allocation of public resources falls within category of discretionary
governmental duties). 
6. On rehearing, the defendants argue our statement of the "good faith" test contradicts the supreme
court's statement of the test in Chambers because, the defendants argue, the supreme court dictated that
the test was strictly an objective one. See 883 S.W.2d at 657. We do not interpret the supreme court's
opinion in Chambers as imposing a strictly objective test for cases in which the nonmovant and official
disagree about whether the official willfully violated the law or was plainly incompetent. For a more
thorough discussion of our interpretation of Chambers, see Dalrymple v. University of Texas System,
No. 03-96-403-CV, slip op. at 10-12 (Tex. App.--Austin June 26, 1997, no writ h.).
7. On rehearing, the defendants point out that the "eavesdropper" later stated that he did not
construe Marugg's statements as indicating a motive to retaliate. The fact that the "eavesdropper" initially
thought the conversation was significant enough to report it to O'Bryant, however, suggests otherwise.
8. Because neither the City nor Marugg and Czech in their official capacities attempted to assert
their independent, as opposed to derivative, sovereign immunity, we do not reach the issue of whether they
were immune from suit under that theory. Nor do we express our opinion on the issue of whether the
doctrine of derivative sovereign immunity afforded governmental entities sued under the Texas Tort Claims
Act should be extended to cases not brought under the Texas Tort Claims Act, an extension the defendants
urge us to make. Compare DeWitt v. Harris County, 904 S.W.2d 650, 652-54 (Tex. 1995) (entity
entitled to sovereign immunity based on official's immunity in cases brought under respondeat superior
theory of Tex. Civ. Prac. & Rem. Code § 101.021), with Kassen, 887 S.W.2d at 8 (generally, plaintiff's
right of action against the government due to waiver of sovereign immunity is not affected by whether a
governmental official or employee has official immunity); see also Garza v. Morales, 923 S.W.2d 800
(Tex. App.--Corpus Christi 1996, no writ) (extending sovereign immunity to government based on
official's immunity, but not stating basis of lawsuit); Antu v. Eddy, 914 S.W.2d 166, 174 (Tex. App.--San
Antonio 1995, no writ) (extending sovereign immunity to government based on official's immunity from
claim of intentional infliction of emotional distress). 
9. Because the parties do not challenge the existence of a contract between the City and the
officers, we assume for purposes of this point that an employment contract existed.
10. For a more thorough discussion of this conclusion, see Dalrymple, supra, slip op. at 16-17.
11. On rehearing, the defendants urge us to opine about whether they would owe a duty to the
officers if in fact an employment contract existed; the defendants contend such an opinion is necessary to
guide the trial court on remand in the event the court finds an employment contract exists. The existence
of a duty depends greatly on the details of the relationship between the parties. Knowing there is a
possibility that no contract or "special relationship" exists, and not knowing any of the details of the contract
or relationship if one does exist, we would be issuing an advisory opinion if we were to comment on this
issue. Because we are forbidden to issue advisory opinions, we decline to do so. See Texas Ass'n of
Business v. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993).



726 S.W.2d 582, 586 (Tex. App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.).
5. Even if the officers challenged the court's determination of the other two elements of the defense,
we would agree with the trial court's judgment on those issues. The defendants took their actions in the
course of carrying out administrative and personnel management duties listed in their job descriptions and
made a part of the summary judgment record. Specifically, Czech was charged with: allocating resources;
establishing appropriate staffing levels; disciplining staff; and assuming full management responsibility for
all department services and activities. Marugg was charged with managing and supervising the patrol shift
and division, participating in development and implementation of goals, objectives, policies, and priorities,
identifying resource needs, disciplining staff, and assigning work activities. Such duties are discretionary
because they involve personal deliberation, decision, and judgment. Cf. Chambers, 883 S.W.2d at 654;
Kassen, 887 S.W.2d at 10 (suggesting allocation of public resources falls within category of discretionary
governmental duties). 
6. On rehearing, the defendants argue our statement of the "good faith" test contradicts the supreme
court's statement of the test in Chambers because, the defendants argue, the supreme court dictated that
the test was strictly an objective one. See 883 S.W.2d at 657. We do not interpret the supreme court's
opinion in Chambers as imposing a strictly objective test for cases in which the nonmovant and official
disagree about whether the official willfully violated the law or was plainly incompetent. For a more
thorough discussion of our interpretation of Chambers, see Dalrymple v. University of Texas System,
No. 03-96-403-CV, slip op. at 10-12 (Tex. App.--Austin June 26, 1997, no writ h.).
7. On rehearing, the defendants point out that the "eavesdropper" later stated that he did not
construe Marugg's statements as indicating a motive to retaliate. The fact that the "eavesdropper" initially
thought the conversation was significant enough to report it to O'Bryant, however, suggests otherwise.
8. Be