TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00055-CV







City of Kyle, Helen Gallagher, Barney Knight and James Miller, Appellants



v.



David Young, Appellee







FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT


NO. 97-0765, HONORABLE CHARLES RAMSAY, JUDGE PRESIDING








 Appellants City of Kyle, Helen Gallagher, Barney Knight, and James Miller appeal
from a district court order denying their motion for summary judgment based on official and
absolute immunity. Because we conclude that the summary judgment evidence established the
individual appellants' official immunity as a matter of law, we reverse the district court's denial
of summary judgment, render judgment that appellants are immune as to certain claims, and
remand for further proceedings.


BACKGROUND FACTS

 This suit arises out of the termination of appellee David Young as Chief of Police
of the City of Kyle. Appellants Gallagher and Miller are members of the Kyle City Council;
appellant Knight is the City Attorney. Young began work as Chief of Police in February 1992. 
On February 4, 1997, the City Council met to evaluate Young's performance and to discuss
allegations that, while acting as Chief of Police, Young had falsified a traffic citation and an
employee's time sheet, obtained a cellular telephone account on a government contract for his
personal use, and failed to appear in municipal court on August 1, 1996, to testify in the
prosecution of traffic violations. No action was taken, and the meeting was recessed until
February 10. 

 On February 10, 1997, the Council reconvened to consider a motion to terminate
Young's employment immediately for "lack of confidence." The motion carried by a vote of
three-to-two. Appellants Gallagher and Miller and a third council member, Vic Whadford, voted
to terminate Young. Council members Mattie Broadfoot and Chevo Pastrano voted against the
motion. City Attorney Knight advised Young, who was present at the meeting, that he had five
days to appeal the Council's decision. Young timely appealed the dismissal and was reinstated
by the Mayor of Kyle, Lee Sturdivant. Young continued to work as Chief of Police and lost no
pay or benefits.

 On February 14, Young reported to the Texas Rangers an incident involving the
allegedly wrongful issuance of a check by the City to the son of a City employee. Ten days later,
Young made a similar report to the F.B.I. 

 The issue of Young's performance as Chief of Police was discussed again at a
council meeting on February 18. Young was invited to open the issue of his employment status
for discussion, but he declined to do so. By a three-to-two vote, the Council amended its
ordinances to prevent the mayor from having the final decision on personnel matters. Three days
later, the mayor overrode the amendatory ordinance. See Tex. Loc. Gov't Code Ann. § 52.003
(West 1999).

 On March 18, the Council again met to discuss Young's performance and voted
three-to-two to dismiss him for "misconduct." The minutes indicate that Young was not present
at the meeting. Again, the mayor overrode the Council's decision, and Young continued in his
duties. 

 This series of meetings and discussions of Young's employment status culminated
in a specially-called council meeting on March 26. Although Young was present at the meeting,
the parties disagree as to whether Young was represented by counsel. Young was invited to
address the Council, but he left the meeting without speaking. After discussion in open session
and executive session, appellant Knight stated that the parties had reached an agreement that
Young would be temporarily suspended in exchange for an apology by Young and the mayor's
agreement not to veto the suspension. Appellant Miller moved to suspend Young for seven weeks
without pay. Prior to a vote on the motion, James Merks, one of the two lawyers present with
Young, stated:


Ladies and gentlemen of the council, my name is James Merks. I have a statement
that David Young has asked me to present to you. He says, "I deeply apologize
for all of the inconvenience this situation has created for the City of Kyle and the
council members. I apologize for the deep concern it has caused everybody. I was
wrong in approving the time sheets, and it's something that will never happen
again." Thank you.



The Council then voted unanimously to suspend Young. 

 At the regular City Council meeting on May 20, 1997, the Council considered
Young's reinstatement. Young's wife spoke to the Council and addressed the allegations against
her husband. After a motion to reinstate failed, the Council voted three-to-two to dismiss Young
"for cause." Young's appeal of the dismissal to the Council was denied. 

 Young then sued the City, claiming that he was terminated in retaliation for
reporting alleged wrongdoing by City employees and officials to the Texas Rangers and the
F.B.I. (1) Young also alleged that the City and the individual appellants conspired to deny him
procedural due process in violation of article I, section 19 of the Texas Constitution. 
Additionally, Young sued appellant Gallagher for defamation and intentional infliction of
emotional distress, appellant Knight and the City for violating his rights to free speech and
procedural due process guaranteed by the United States Constitution, and the City for unjust
enrichment related to accrued vacation pay. Young filed a motion for summary judgment on the
ground that he was wrongfully denied accrued vacation pay after he was terminated. 

 The appellants filed a motion for summary judgment asserting the official immunity
of the individual appellants and, derivatively, the immunity of the City, with respect to Young's
state constitutional claims and his claim of conspiracy. The appellants also asserted absolute
immunity for Gallagher and Miller from any complaint by Young concerning their actions taken
as legislators for the City. The district court denied both parties' motions for summary judgment.


DISCUSSION

 An appeal ordinarily may be taken only from a final judgment. See North E. Indep.
Sch. Dist. v. Aldridge, 400 S.W.2d 893, 895 (Tex. 1966). Generally, denial of a motion for
summary judgment is not a final judgment and is therefore not appealable. See Novak v. Stevens,
596 S.W.2d 848, 849 (Tex. 1980). Section 51.014 of the Texas Civil Practice and Remedies
Code, however, specifically allows appeal of some interlocutory orders, including an order
denying a motion for summary judgment based on an assertion of immunity by an individual who
is an employee of the State or a political subdivision of the State. (2) In this case, appellants moved
for summary judgment based solely upon the official immunity of the individual appellants with
respect to Young's state constitutional claims and his claim of conspiracy. (3) 

 Government employees, including city officials, are entitled to official immunity
from suit arising from the performance of (1) their discretionary duties (2) in good faith, so long
as (3) they are acting within the scope of their authority. See City of Lancaster v. Chambers, 883
S.W.2d 650, 653 (Tex. 1994); see also Kassen v. Hatley, 887 S.W.2d 4, 8 (Tex. 1994). The
purpose of official immunity is to insulate the functioning of government from the harassment of
litigation. See Kassen, 887 S.W.2d at 8. Where official immunity protects a government official,
the government entity for which he acts derives immunity therefrom by operation of the
respondeat superior principle. See Dewitt v. Harris County, 904 S.W.2d 650, 653-54 (Tex.
1995); City of Houston v. Kilburn, 849 S.W.2d 810, 812 (Tex. 1993). This derived immunity
is not to be confused with the entity's governmental immunity, which protects the government
entity directly. See Kassen, 887 S.W.2d at 8. By virtue of the assertion of immunity by the
individual appellants, we exercise jurisdiction over both the City's and the individuals'
interlocutory appeal. 

 Official immunity is an affirmative defense; thus, we must determine whether the
appellants conclusively proved all essential elements of the defense as a matter of law. See
Chambers, 883 S.W.2d at 653; City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678
(Tex. 1979). If appellants carried the burden of establishing each of the three elements of official
immunity, we must then determine whether Young produced proof creating a material fact issue
as to any element. In deciding whether there is a disputed issue of material fact precluding
summary judgment, evidence favorable to the nonmovant will be taken as true, and every
reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his
favor. See Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). A
defendant is not entitled to judgment as a matter of law on an affirmative defense if the plaintiff
supplies evidence such that reasonable minds could differ on any material fact issue relevant to
the defense. See Kassen, 887 S.W.2d at 9. 

 The parties agree that the individual appellants were government officials acting
within the scope of their authority. But Young contests whether appellants' summary judgment
evidence conclusively established that the individual appellants were performing discretionary
functions in good faith. Young first contends that appellants failed to present any evidence to
show that their participation in council meetings at which his employment status was discussed
and voted upon involved the performance of discretionary duties.

 A government employee's official actions are cloaked with official immunity when
the employee's job requires the exercise of personal judgment and discretion. See Travis v. City
of Mesquite, 830 S.W.2d 94, 102 (Tex. 1992). In contrast, a government employee's
performance of duties that are merely ministerial in nature is not cloaked with official immunity. 
See id. Ministerial acts involve obedience to orders or the performance of a duty in which the
actor has no choice. See Chambers, 883 S.W.2d at 654; Albright v. Department of Human Servs.,
859 S.W.2d 575, 579 (Tex. App.--Houston [1st Dist.] 1993, no writ). Investigating and acting
on gathered facts has been characterized as a discretionary function. See Albright, 859 S.W.2d
at 579; see also Fowler v. Szostek, 905 S.W.2d 336, 342 (Tex. App.--Houston [1st Dist.] 1995,
no writ).

 Our review of the summary judgment record reveals that Gallagher and Miller were
carrying out discretionary functions when they investigated the allegations against Young and
voted to terminate his employment as Chief of Police. In affidavits attached to appellants' motion
for summary judgment, Gallagher and Miller recounted the events leading up to Young's
termination. Both council members described receiving information at the council meeting on
February 4, 1997, concerning alleged misconduct by Young in his capacity as Chief of Police. 
They testified that the Council discussed the allegations and that Young participated in the
discussion. Both Gallagher and Miller explained that when the Council reconvened on February
10 and concluded the discussion, they voted to terminate Young's employment. Gallagher and
Miller also noted that their votes to terminate at this meeting and each subsequent meeting were
based on a consideration of the issues first brought forward on February 4 regarding Young's
performance as Chief of Police. 

 Furthermore, in a deposition submitted as part of appellants' summary judgment
proof, City Attorney Knight testified that he discussed the allegations against Young with
Gallagher before the February 4 meeting. Knight observed that when personnel matters are
discussed at council meetings, his job is to "make sure that the process is one that is reasonable,
fair and open, where everybody gets a chance to get all the facts and make the judgments." 
Finally, Knight testified that Young's termination on May 20 was based on a discussion of the
same allegations considered at the February 4 meeting. 

 It is evident that in investigating the allegations made against Young, the individual
appellants had to determine facts, draw conclusions, and make decisions. See Heikklia v. Harris
County, 973 S.W.2d 333, 336 (Tex. App.--Tyler 1998, pet. denied). A state employee or official
who is required to pass on facts and determine his actions by the facts found is performing
discretionary duties. See Lazaro v. University of Texas, 830 S.W.2d 330, 332 (Tex.
App.--Houston [14th Dist.] 1992, writ denied). Because we find no evidence in the summary
judgment record to raise a material fact as to appellants' exercise of discretion, we conclude that
appellants have conclusively proved that they were performing discretionary acts, not ministerial
ones.

 We turn now to whether appellants' summary judgment proof establishes as a
matter of law that the individual appellants performed their discretionary duties in good faith. The
test for good faith of a government official is whether, under the same or similar circumstances,
a reasonable government official could have believed that her actions were lawful based upon the
information she possessed at the time of her conduct. See Chambers, 883 S.W.2d at 656. The
test focuses on the objective reasonableness of the official's actions, not on whether the official
acted with subjective good faith. This element of the official immunity test is designed to ensure
that officials who act in good faith, even negligently, are protected. See id. at 655, 656 n.5. In
order to controvert summary judgment proof on the element of good faith, the plaintiff must show
that "no reasonable person in the defendant's position could have thought that the facts were such
that they justified [the] defendant's acts." Id. at 657.

 Our review of the summary judgment proof reveals that appellants carried the initial
burden of showing that they acted in good faith. Attached to appellants' motion for summary
judgment were the official minutes of regular council meetings held on February 4 and 18, March
18, May 20, and June 3 and 17, as well as special meetings held on February 10 and March 26. 
At each of these meetings, Young's actions and his employment status were discussed in varying
degrees of detail. Taken together, the minutes reflect a deliberative process of which Young was
largely aware. Although Young contends that he was not permitted to address the Council or to
present proof, the minutes of the meetings establish that he was offered opportunities to respond
to the allegations and simply declined to do so.

 In an affidavit submitted by Gallagher, she explained that at the February 4 council
meeting, the Council received information concerning four matters related to Young's
performance as Chief of Police: (1) the falsification of a time sheet for employee Mary Ellen
Porter, the City Animal Control Officer, for work she did not perform on January 13 and 14,
1997; (2) the existence of cellular telephone contracts entered into on behalf of the City by Young
for telephones not approved by the City Council; (3) a discrepancy regarding a warning ticket that
had been issued by Officer Ronald Harvel; and (4) Young's failure to appear in municipal court
as a witness in the prosecution of traffic violations. Gallagher testified that she believed Young's
involvement in these matters constituted official misconduct and specifically denied voting to
terminate Young based on personal motivations. She testified that "[a]ll of the actions that I took
with regard to the employment of David Young as Chief of Police for the City of Kyle were taken
with the best interest of the City in mind and I acted as responsibly as possible as a representative
of the people of the City of Kyle." 

 Gallagher also explained that she became aware that Young had reported suspicious
activity in the government of the City of Kyle to the Texas Rangers and the F.B.I. in August
1997, several months after the Council voted for the last time to terminate Young. Miller's
affidavit corroborates much of the information in Gallagher's affidavit. This evidence suggests
that both Gallagher and Miller believed that they had a valid basis for voting to terminate Young. 


 Similarly, the summary judgment proof suggests that City Attorney Knight acted
in good faith. In his deposition, Knight testified that he had advised the Council on multiple
occasions that it had sufficient evidence before it to consider a wide range of options, ranging
from no action to termination. Knight denied encouraging the Council to terminate Young and
testified that he had tried unsuccessfully to broker a probation deal.

 Because the individual appellants in their summary judgment proof established good
faith, the burden shifted to Young to submit an affidavit or otherwise show that no reasonable
person in appellants' position could have believed his or her conduct to be reasonable in light of
the information possessed by the official at the time the conduct occurred. See Chambers, 883
S.W.2d at 656. The nonmovant's hurdle seems difficult to leap because even an intentional, ill-motivated action may be explained by some plausible, yet hypothetical, rationale. See O'Bryant
v. City of Midland, 949 S.W.2d 406, 412 (Tex. App.--Austin 1997, pet. granted). Although the
nonmovant must satisfy an "elevated" standard of proof, the burden is intended to accommodate
the competing interests involved. See id. Summary judgment proof is to be viewed in the light
most favorable to the nonmovant, with all doubts resolved in favor of the nonmovant. See Nixon,
690 S.W.2d at 548-49. The synthesis of these two principles results in the following standard: 
a nonmovant seeking to defeat summary judgment on the issue of good faith must show that no
reasonable person in the official's position could have thought the nonmovant's version of the
facts justified the action. See O'Bryant, 949 S.W.2d at 412. In other words, in summary
judgment proceedings in which the parties disagree about the reasons underlying an official's
actions, the court must take the nonmovant's responsive allegations as true and evaluate the
evidence supporting those allegations. See Dalrymple v. University of Texas Sys., 949 S.W.2d
395, 402 (Tex. App.--Austin 1997), rev'd in part on other grounds, 42 Tex. S. Ct. J. 815 (June
24, 1999). 

 Young alleged in an affidavit attached to his response to appellants' motion for
summary judgment that "in early January or February 1997," council member Pastrano informed
him of an allegedly improper payment made by the City to the son of a City employee. Young
testified that on February 14, he reported the alleged wrongdoing to the Texas Rangers, and on
February 24, he made a similar report to the F.B.I. Young claimed that Gallagher and Miller
voted to terminate him primarily because of these reports. 

 Young also alleged that he received no notice of the issues to be discussed at the
February 4 council meeting, nor was he ever notified by the Council of the specific conduct on
his part that supported the Council's decision to terminate him. Young explained that throughout
the series of council meetings at which his performance as Chief of Police was discussed, he was
denied the opportunity to call witnesses or to question adverse witnesses. In particular, Young
alleged that at the February 10 council meeting, Gallagher told him that the Council did not want
to hear from Young's witnesses because they were his friends. Finally, Young testified that on
February 18, 1997, City Attorney Knight told him that if he made any statement to the Council
about the allegations raised against him, he would waive his right to sue the Council. Young's
testimony was corroborated by the testimony of his wife, Linda Young.

 Ronald Ray Harvel, a City of Kyle police officer, testified that on or about
February 4, 1997, while eating breakfast at a Shoney's restaurant with Young and Jim Clifton,
another member of the Kyle police force, Young informed the two officers of the suspicious City
compensation check. Harvel explained that he believed Clifton, in hopes of undermining Young
and securing the job of Chief of Police, conveyed Young's statements about the check to
Gallagher and Miller, who then decided to fire Young because of his knowledge of illegal activity
taking place within City government. 

 Council member Pastrano alleged in his affidavit that at a lunch meeting with
Gallagher one week before the February 4 council meeting, Gallagher informed him that the
Council needed to discuss issues regarding Young in an executive session. Pastrano explained
that although Gallagher did not elaborate upon the specific issues at that time, she told him that
she had agreed with Miller and Whadford to "get rid" of Young and that Jim Clifton would be
the next Chief of Police. Pastrano testified that Gallagher brought up the issues regarding Young
during the executive session of the February 4 council meeting, and that council member
Whadford, along with other council members, "aired out these issues in open session." Pastrano
alleged that at the council meetings on February 4 and 10, Officer Clifton presented testimony
damaging to Young, while witnesses favorable to Young were not permitted to testify. Finally,
Pastrano alleged that Gallagher, Miller, and Whadford did not "have an open mind" about the
allegations against Young and that City Attorney Knight instructed the Council at the end of its
executive session on February 4 that it had only two options--terminate Young or accept his
voluntary resignation.

 Council member Mattie Broadfoot corroborated much of Pastrano's testimony,
alleging that Young was not given a fair opportunity to present his side of the story because he
was not given adequate notice as to the grounds for his termination, nor was he permitted to cross-examine Clifton or present evidence on his own behalf. Broadfoot also alleged that during one
of the council meetings at which Young's termination was discussed, City Attorney Knight stated,
"Jim Clifton would make a good Chief of Police."

 While it is undeniable that ill will existed between Young and the individual
appellants, the critical question is whether Young established that no reasonable person could have
thought his actions warranted termination. After reviewing Young's proof, we conclude that no
fact issue exists as to the "good faith" element of the official immunity defense. It is
uncontroverted in the evidence before us that Gallagher and Miller voted to terminate Young
before learning of his reports to the Texas Rangers and the F.B.I. Gallagher and Miller testified,
and council members Pastrano and Broadfoot confirmed, that the Council discussed the allegations
against Young before voting on punishment. Although Pastrano alleged that at the end of the
executive session Knight restricted the Council to two possible punishments, termination or
voluntary resignation with severance pay, Knight testified that during the session he presented the
Council with a wide range of punishment options, including no action.

 The evidence supporting Young's allegations that the individual appellants
conspired to deny him procedural due process and to wrongfully terminate him is not sufficient
to raise a fact issue as to whether the termination was motivated by antipathy rather than an
evaluation of the charges. Bad blood does not equal bad faith. Viewing the actions of appellants
in response to the allegations against Young in an objective manner as we must, we hold that the
evidence established that a reasonable person in the shoes of appellants could have concluded that
Young's actions were a valid basis for termination.


CONCLUSION

 We hold that the summary judgment evidence conclusively established that a
reasonable person in appellants' position could have believed his or her conduct was reasonable
in light of the information possessed by the official at the time the conduct occurred. Therefore,
the individual appellants are entitled to official immunity from Young's state constitutional claims
as well as his conspiracy claim, and the City is entitled to immunity from these claims based on
the immunity of its officials. Because we conclude that official immunity is dispositive of the
issues herein, we decline to address appellants' argument that Gallagher and Miller are also
entitled to absolute immunity. 

 We reverse the district court's denial of summary judgment and render judgment
that appellants are immune from Young's state constitutional claims and conspiracy claim. We 
remand all other causes of action asserted by Young in his original petition to the district court
for further proceedings.



 

 Jan Patterson, Justice

Before Justices Jones, Kidd and Patterson

Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: September 30, 1999

Do Not Publish
1. See Tex. Gov't Code Ann. § 554.002(a) (West Supp. 1999).
2. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5) (West Supp. 1999). 
3. We will discuss Young's whistleblower claim and other claims only to the extent that
they relate to the appellants' assertion of official immunity to the claims on appeal. 



rminate Young or accept his
voluntary resignation.

 Council member Mattie Broadfoot corroborated much of Pastrano's testimony,
alleging that Young was not given a fair opportunity to present his side of the story because he
was not given adequate notice as to the grounds for his termination, nor was he permitted to cross-examine Clifton or present evidence on his own behalf. Broadfoot also alleged that during one
of the council meetings at which Young's termination was discussed, City Attorney Knight stated,
"Jim Clifton would make a good Chief of Police."

 While it is undeniable that ill will existed between Young and the individual
appellants, the critical question is whether Young established that no reasonable person could have
thought his actions warranted termination. After reviewing Young's proof, we conclude that no
fact issue exists as to the "good faith" element of the official immunity defense. It is
uncontroverted in the evidence before us that Gallagher and Miller voted to terminate Young
before learning of his reports to the Texas Rangers and the F.B.I. Gallagher and Miller testified,
and council members Pastrano and Broadfoot confirmed, that the Council discussed the allegations
against Young before voting on punishment. Although Pastrano alleged that at the end of the
executive session Knight restricted the Council to two possible punishments, termination or
voluntary resignation with severance pay, Knight testified that during the session he presented the
Council with a wide range of punishment options, including no action.

 The evidence supporting Young's allegations that the individual appellants
conspired to deny him procedural due process and to wrongfully terminate him is not sufficient
to raise a fact issue as to whether the termination was motivated by antipathy rather than an
evaluation of the charges. Bad blood does not equal bad faith. Viewing the actions of appellants
in response to the allegations against Young in an objective manner as we must, we hold that the
evidence established that a reasonable person in the shoes of appellants could have concluded that
Young's actions were a valid basis for termination.


CONCLUSION

 We hold that the summary judgment evidence conclusively established that a
reasonable person in appellants' position could have believed his or her conduct was reasonable
in light of the information possessed by the official at the time the conduct occurred. Therefore,
the individual appellants are entitled to official immunity from Young's state constitutional claims
as well as his conspiracy claim, and the City is entitled to immunity from these claims based on
the immunity of its officials. Because we conclude that official immunity is dispositive of the
issues herein, we decline to address appellants' argument that Gallagher and Miller are also
entitled to absolute immunity. 

 We reverse the district court's denial of summary judgment and render judgment
that appellants are immune fr